Abraham N. Geller, J.
This is a motion to dismiss each of the five causes of action of the amended complaint for legal insufficiency. The facts alleged by plaintiff, upon the basis of which causes sounding in negligence and conversion have been asserted, are the following.
That an employee of plaintiff bank, one William Scorca, prepared and signed 123 checks drawn on the account of plaintiff in the Bank of New York from June, 1962 to December, 1963 aggregating $562,354.36, all made payable by Scorca to the order of one Oscar Rosenfeld but not intending him to have any interest in said checks, and that Scorca procured the cosigning of said checks by another employee of plaintiff also authorized to sign checks on its behalf. That all of said checks were cashed through defendant American Trust Company (American) pursuant to the authority and approval of one of its then vice-presidents, defendant Curley. That this was effected by one William Peck opening a checking account in June, 1962 at the Bronx office of American, using the false name of Morris Rosen and a false address. That William Peck, using the false name of Morris Rosen, cashed these checks with the names “Oscar Rosenfeld ” and “Morris Rosen” indorsed on the back thereof. That American obtained payment for said checks from the Bank of New York, which charged same to plaintiff’s account.
In the first cause of action plaintiff charges that defendants were negligent in that the checks were cashed, were for large sums, always in odd amounts ranging from $1,209.37 to $6,523.09, bore the two mentioned indorsements, but nevertheless defendants made no inquiries during all this period of time concerning the said 6 ‘ Morris Rosen ’ ’ or concerning the checks or the transactions, or of the plaintiff in any manner, although if any such inquiry had been made plaintiff would have been enabled to detect and halt the fraudulent scheme of Scorca and defend *696 ants would not have cashed the checks. The second cause of action also charges negligence in that defendants did not observe an alleged custom and practice in the banking business in the City of New York that a bank will not cash or accept for deposit a check bearing two or more indorsements, particularly for a large amount, unless the particular circumstances are made known to it or the standing of the depositor presenting the check is known to the bank.
The third and fifth causes are in conversion, charging that the sums received by American from the Bank of New York in payment of the checks were the property of plaintiff and were wrongfully converted. The fourth cause alleges that the checks were made and given by Scorea in payment of a gambling debt incurred in this State and were therefore void.
American’s sweeping argument in support of the motion to dismiss would in effect absolve a collecting bank, as distinguished from the drawee bank, from any liability in negligence or conversion arising out of the collection of a forged or unauthorized check. Soma v. Handrulis (277 N. Y. 223) contradicts that generalized proposition. There it was held that a bank receiving a check for collection could be held liable for gross negligence in failing to make inquiries which would have revealed the theft where it had ‘ ‘ knowledge of such facts that [its] action in taking the instrument amounted to bad faith” (Negotiable Instruments Law, § 95). Since, under the circumstances of that case, no indorsee acquired title, the cause of action in conversion was upheld.
Here, however, title to the checks did pass. These checks were, in contemplation of law, payable to bearer so that the fact that the indorsement of “ Oscar Bosenfeld ” was a forgery does not, in itself, render American as a collecting bank liable, whether in conversion or otherwise.
Subdivision 3 of section 28 of the Negotiable Instruments Law, as amended in 1960 (the “ Fictitious Payee Act ”), covers this situation. That subdivision formerly provided that an instrument is payable to bearer “When it is payable to the order of a fictitious person, or a non-existing person, or an existing person not intended to have an interest in it, and such fact was known to the person making it so payable ”. Under that provision it was held in City of New York v. Bronx County Trust Co. (261 N. Y. 64) that, where a dishonest employee made a check payable to a fictitious person, the employer who unknowingly signed such a check was not chargeable with the knowledge of his dishonest employee and could recover from a bank which cashed the check on the resulting forged indorse- *697 meat. The 1960 amendment changed the rule to have the drawer-employer bear the loss under such circumstances, adding to subdivision 3,‘ ‘ or known to his employee or other agent who supplied the name of such payee ”.
So, here, since Scorca, who supplied the name of “ Oscar Rosenfeld” as payee, knew that he was not intended to have any interest in the check, the checks signed by Scorca and another employee, even though the latter is not alleged to have such knowledge, are deemed payable to bearer. Under the former rule, both signatories as the persons “making it so payable ” were required to have such knowledge before the check was deemed a bearer check (United States Fid. & Guar. Co. v. National City Bank of N. Y., 284 N. Y 651), but, in view of the 1960 amendment, it need be the knowledge only of the employee or agent who supplied the name of such payee, if the person signing the check makes it so payable.
Accordingly, the causes of action in conversion must fall. Title to the checks passed upon delivery of these bearer checks. Liability, if any, must be predicated on some other ground.
That ground can only be based upon a showing that American was not a holder in due course because it had “notice of any infirmity in the instrument” (Negotiable Instruments Law, § 91), such notice consisting of “knowledge of such facts that [its] action in taking the instrument amounted to bad faith” (Negotiable Instruments Law, § 95).
“ Bad faith ” is not mere carelessness or negligence (Coopersmith v. Maunz, 227 App. Div. 119). But gross carelessness (Canajoharie Nat. Bank v. Diefendorf, 123 N. Y 191) or willful ignorance (Manufacturers & Traders Trust Co. v. Sapowitch, 296 N. Y. 226) may constitute evidence of bad faith. Plaintiff’s claim, when properly analyzed, is that American, despite its accumulating knowledge of facts which called for inquiry, failed to make inquiry which would have disclosed the infirmity in the checks being presented to it for cashing. Its claim is bottomed on American’s alleged bad faith in continuing to cash this great number of large checks under the allegedly peculiar circumstances of the case without making any inquiry. That is the cause of action hinted at by the causes alleging negligence. It should be repleaded in specific and proper form in conformity with the foregoing.
It seems clear that the 1960 amendment shifting the loss to the drawer-employer of a dishonest employee was intended to relieve from responsibility a bank which acted in error but not amounting to bad faith. The amendment could not have been intended to absolve completely from responsibility a bank *698 chargeable in a commercial sense with bad faith and therefore not entitled to the protection it would otherwise receive under the law (cf. Soma v. Handrulis, 277 N. Y. 223, 234, supra). Any other interpretation would confer immunity upon banks, while aiding and abetting by means of their gross negligence or willful ignorance dishonest employees to steal from their employers.
The fourth cause, based on the principle of the invalidity of a gambling transaction, is dismissed. Although the law will not lend its aid to a party seeking to enforce a gambling transaction, there is no remedy provided where the transaction is fully consummated and no longer remains executory.
Accordingly, the third, fourth and fifth causes are dismissed without leave to replead. The first and second causes are dismissed with leave to replead.