433 P.2d 605

**JAEGER AND BRANCH, INC., a corporation, Plaintiff and Respondent,**

v.

**Jim PAPPAS dba Jim Pappas Construction Company, Defendant and Appellant.**

**No. 10885.**

Supreme Court of Utah.

Nov. 9, 1967.

Richards, Bird, Hart & Kump, M. Byron Fisher, Salt Lake City, for appellant.

Ray, Quinney & Nebeker, Don B. Allen, Salt Lake City, Louis A. Lipofsky, Beverly Hills, Cal., for respondent.

**102**

CROCKETT, Chief Justice:

█ Plaintiff Jaeger and Branch, Inc., claiming to be a holder in due course, sued to recover on a $6,500 bank check, payment on which had been stopped by its maker, defendant, Jim Pappas. It is not disputed that the introduction of the check, admittedly executed and issued by the defendant, made a prima facie case of its genuineness and that the plaintiff was a holder in due course. Consequently the burden of establishing his defense to the contrary shifted to the defendant.[1]

After a trial and consideration of the evidence, the court made findings in favor of the plaintiff and entered judgment accordingly. The defendant's position on appeal is that the evidence compels a finding that the plaintiff was not a holder in due course because it either had actual notice, or knew sufficient facts to place it on inquiry, which would have revealed such a defense.

█ We summarize the facts as they appear from reviewing the evidence in accordance with the traditional rule on appeal.[2]

In connection with his construction and furnishing of the C'est Bon Hotel in Park City, Utah, the defendant, Jim Pappas, had been purchasing materials from the Allo Distributing Company of North Hollywood, California. On January 11, 1966, a shipment of carpet from that company, consigned to the defendant was being held up in Ogden, Utah. On that date Pappas had two telephone conversations with Allo in California about this shipment and why it was not being delivered. Allo requested Pappas to call the plaintiff, Jaeger, to whom Allo owed money for materials. In compliance with that request, on that same day, January 11, Pappas called Jaeger and inquired about the holding up of the shipment of carpet and whether Allo was meeting its obligations to Jaeger. Jaeger answered that it knew nothing about the tie-up of the shipment and stated that for reasons of business ethics it would not divulge whether or not Allo owed them money. Incidentally, but of no legal significance here, in the conversation it was nevertheless made plain that Allo was indebted to Jaeger.

Sparing the detail of and contradictions in the testimony as to the content of the telephone conversations just referred to, and two more between Pappas and Allo the next day, January 12, these facts emerge: Pappas apparently gave sufficient assurance of forthcoming payment to get the shipment of carpet released. On

---

1. See Sec. 70A–3–307(2), U.C.A.1953 (Utah Uniform Commercial Code).

2. In the light favorable to the trial court's findings and judgment, see Nasner v. F. G. Burton, 2 Utah 2d 236, 272 P.2d 113.

January 12, he made out a check for $6,500 drawn on Walker Bank in Salt Lake City, payable to Allo, and forwarded it to them. Two days later, on January 14, Allo endorsed the check and delivered it to make payment to Jaeger, who in turn deposited it in its bank account in Los Angeles. It is significant that in neither of the conversations of January 11 referred to did Pappas say anything about placing any conditions upon a check he would send. It was not until the next day or the day after (testimony is somewhat uncertain) that it is claimed that he informed Allo by telephone that if the latter did not send him "everything you say you're going to" that he would stop payment on the check he sent. But is is not shown that this statement was communicated to the plaintiff, Jaeger. The important facts are that the only conversation with Jaeger had occurred a day or two before the alleged threat about stopping the check; and that this record is devoid of any indication that anything was said to Jaeger about any condition or limitation upon any such check, which, the fact is, did not come into existence until the 12th.

In the meantime, the carpet had been released and was received by the defendant on January 14. It was not until four days later, on January 18, that the defendant filed with his bank a stop-payment order indicating as the reason: "Overpayment." Inasmuch as the check had not been cleared for payment with defendant's bank, payment was refused and the check was returned to the plaintiff, hence this lawsuit.

We have no disagreement with certain postulates inherent in plaintiff's position: that when one who takes a negotiable instrument is aware of any fact which should alert him that there is a defense, he cannot close his eyes and ignore it. He must act in good faith and exercise such caution as a reasonable person would under those circumstances and is chargeable with knowledge of such facts as reasonable inquiry would disclose. However, the converse of that proposition is equally true, that in the absence of anything to warn him to the contrary, he may assume that persons with whom he deals are themselves acting honestly and in good faith. A very high proportion of the commerce of the world is carried on through credit, which is necessarily based on confidence in the honesty and integrity of those who engage in it. To impose upon one who is offered commercial paper the duty of inquiring in each instance whether obligations have been satisfactorily performed by prior holders would so burden such transactions as to create insuperable impedimenta to the free exchange of negotiable paper, an indispensable part of modern business.[3]

From our survey of the facts in this case in the light of the principles we have

3. See 11 Am.Jur.2d, Bills and Notes (1963), Sec. 399, and cases cited therein.

discussed herein, we have discovered nothing which would compel the finding contended for by the defendant: that the plaintiff was aware of facts which precluded him from being a holder in due course. To the contrary, the evidence provides ample support for the trial court's rejection of that contention in favor of what impresses us as a reasonable view of the situation: that what the defendant Pappas attempted to do was to get the shipment of carpet released by the use of this check, and that when he accomplished that purpose, he sought to renege on his commitment by stopping payment on the check.

Affirmed. Costs to plaintiff (respondent).

CALLISTER, TUCKETT, HENRIOD and ELLETT, JJ., concur.