489 P.2d 247

Evan MECHAM et al., Appellants,

v.

UNITED BANK OF ARIZONA, an Arizona state bank, a corporation, et al., Appellees.

No. 10335.

Supreme Court of Arizona, In Division.

Sept. 27, 1971.

Rehearing Denied Oct. 19, 1971.

---

Rawlins, Ellis, Burrus & Kiewit by Chester J. Peterson, Phoenix, for appellants.

Carson, Messinger, Elliott, Laughlin & Ragan by Robert W. Holland, Phoenix, for appellee United Bank of Ariz.

Stephen W. Connors, Phoenix, for appellees Munson.

CAMERON, Justice.

This is an appeal by the maker of a promissory note from a judgment in favor of the payee, Max E. Munson, and the United Bank of Arizona claiming to be a holder in due course.

On appeal we are called upon to answer the following questions:

1. Was the bank a holder in due course?

2. Was there consideration for the note?

The facts necessary to decide this appeal are as follows. In late 1966, Mecham Investment Company (Mecham Investment) began planning construction of a shopping center in Flagstaff, Arizona. Pursuant to that plan, Mr. Evan Mecham, president of the corporation, orally contracted with Munson Mortgage and Investment Company (Munson Mortgage) to secure a permanent first mortgage loan commitment in the amount of $675,000 at 7% interest per annum.

On or about 3 February 1967, Munson Mortgage received from Security Mutual Life Insurance Company of New York (Security) a document entitled "Permanent First Mortgage Loan Commitment—Mecham Investment Company." This letter, however, provided for a 7½% per annum interest rate. It also called for acceptance prior to 13 February 1967. Munson Mortgage wrote a letter to Mecham Investment on the 14th day of February concerning certain amendments to the Security letter of 3 February. One of the terms was a prom-

ised modification of the interest rate from 7½% to 7%. The letter also contained the following breakdown of the sums due to Munson and Security by Mecham as follows:

"Summary of remittance to be accompanied by your acceptance of this commitment is as follows:

| | |
|---|---|
| Security Mutual Life Commitment Fee | $13,500.00 |
| *Security Mutual Life Good Faith Deposit | 6,750.00 |
| Munson Mortgage Earned Fee | 10,125.00 |
| Total | $30,375.00 |

*To be refunded in full upon purchase of loan by Security Mutual Life Insurance Co."

This letter was "approved and accepted" by Mecham Investment on the 20th day of February. At that time, Mecham delivered to Munson two notes. The first of these, for $20,250, due 24 February 1967 and payable to Security, represented the commitment fee and good faith deposit ($13,500 and $6,750) due Security pursuant to the 3 February offer. The second, for $10,125 by Evan and Francis Mecham and Mecham Pontiac Corporation, due in 15 days, represented the fee of Munson Mortgage.

On 6 March 1967, Munson endorsed his acceptance and approval. This endorsement apparently followed renewed oral confirmation by Security of earlier promised modifications. At that time the $20,250 note was returned to Mecham Investment, and a note for $6,750 by Evan Mecham in favor of Security, together with a check in the amount of $13,500 by Mecham Investment in favor of Security, was given to Munson. The back of the check contained the following:

"Acceptance of this check constitutes commitment for a loan of $675,000.00 on a 15 year level amortization plan at seven percent interest for 'Merchandise Fair' Shopping Center at Cedar Ave. & Isabel St. in Flagstaff, Arizona."

That check was specially endorsed by Security.

On 14 March, Munson Mortgage received ostensible written confirmation of approval of Security's finance committee of the 7% rate and basic approval on the remaining modifications. This letter was signed by James K. Johnson of Security's Investment Department.

Because of an unrelated past due and owing debt, Munson offered the 20 February note in the amount of $10,125 to the United Bank as security and in exchange for an agreement for forbearance with collateral. The note was past due, however, and the bank refused to accept it. Thereupon, Munson drew a new 90 day note, dated 1 December 1967, and took it to Mecham for signature. Munson and Mecham agreed that a 120 day note was preferable. Written modification of the note's term and due date were initialed by the two parties. This note provided for payment to Max Munson rather than Munson Mortgage, and was made by Mecham Pontiac Corporation by Evan Mecham, President, and Mr. and Mrs. Mecham individually, the shareholders of Mecham Investment. The original note was made payable to Munson Mortgage and made solely by Mecham Pontiac Corporation. The bank similarly refused to accept this note—apparently due to the alterations on its face.

As a result, the bank drew a new note having the same due date, payee and makers as the second note. The principal amount was changed to reflect the intervening accrued interest. They requested in addition to the signatures on this note, dated 19 January 1968, that they have evidence of a resolution of the board of Mecham Pontiac Corporation authorizing Evan Mecham to execute the new note. Such a resolution was passed prior to the signing of the note, i. e. 18 January 1968, and authorized Mecham to execute the note to Munson "covering the amount due for a permanent commitment from Security Mutual." The 19 January note, as accepted by United Bank, is the subject of this suit. Mecham coun-

terclaimed against Munson for $13,500 as well as any amounts found due to United Bank on its complaint. From a judgment in favor of both United Bank, as plaintiff, and Max Munson, cross-defendant, defendant Mecham appeals.

## HOLDER IN DUE COURSE

Arizona adopted the Uniform Commercial Code (UCC). A.R.S. § 44-2201, et seq., effective 31 December 1967. Since this note was dated 19 January 1968, it will be interpreted in light of the Uniform Commercial Code.

According to § 44-2504 A.R.S., in order to be a negotiable instrument, a writing must be (1) signed by the maker, (2) contain an unconditional promise or order to pay a sum certain in money, (3) be payable at a definite time, and (4) be payable to order or to bearer. The fact that the note in question provides for an amount plus 6% interest to be paid when due does not preclude its being a sum certain. § 44-2506, subsec. A, par. 1 A.R.S. Neither does its covenant to pay costs of collection and attorney's fees upon default. § 44-2506, subsec. A, par. 5 A.R.S. When a note, such as this one, provides for payment on or before a stated date it is payable at a definite time. § 44-2509, subsec. A, par. 1 A.R.S. And, finally, an instrument is payable to order when it is payable to the order of a person who is not the maker, drawer, or drawee. § 44-2510, subsec. A, par. 3 A.R.S.

Thus, the note before the court is a negotiable instrument. As such it is the proverbial traveler without baggage. It is free to circulate in the stream of commerce free of defects not apparent on its face. As § 44-2202, subsec. B, par. 2 A.R.S. acknowledges, this unimpaired circulation is designed to permit facilitation of commercial practices. It is for that reason, among others, that Mr. Mecham's allegation of conditional delivery is not permitted to change his legally unconditional promise to pay to a conditional promise—thereby destroying its negotiability. See § 44-2505 subsec. A, par. 1 A.R.S. The comments

to predecessor provision UCC 3-105 (1) (A) clearly indicate that the section was "intended to make it clear that, so far as negotiability is affected, the * * * character of the promise or order is to be determined by what is expressed in the instrument itself."

Thus, we turn to the possessory nature of the bank. § 44-2208, par. 20 A.R.S. defines a holder as a "person who is in possession of a document of title or an instrument or an investment security drawn, issued or indorsed to him or to his order or to bearer or in blank." To become a holder of an order instrument there must be delivery with any necessary endorsement. § 44-2524, subsec. A, A.R.S. Munson delivered this note to the bank after endorsing in blank as provided in § 44-2526, subsec. B A.R.S. The bank was a holder.

Now, we seek to determine whether the bank is a holder in due course. According to § 44-2532, subsec. A A.R.S., a holder in due course is a holder who takes the instrument (1) for value, (2) in good faith, (3) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person. In this case the bank took the note as security for an antecedent debt and in exchange for an agreement for forbearance with collateral. § 44-2533, par. 2 A.R.S. acknowledges this to be "taking for value." Additionally, § 44-2545 A.R.S. provides that no consideration is necessary for an instrument given as security for an antecedent obligation of any kind. As to "good faith", defined as honesty in fact in the conduct or transaction concerned [§ 44-2208, par. 19 A.R.S.], we have no doubt that the mere preparation for signature, of a new note with the same makers, payee, due date, interest rate, etc. as the one before them [and rejected for alterations apparent on its face, see § 44-2534, subsec. A, par. 1] meets the standard.

As to notice of a defense or claim, it means, minimally, that from all the facts and circumstances known to

him at the time in question one has reason to know a given fact exists. § 44–2208, subsec. 25, par. c A.R.S. The critical time for such notice is when the party comes into possession as a holder. The record indicates that at such time the bank had reason to know several facts pertinent to this issue. The first of these is that the note which it came into possession of was issued in return for a promise and accompanied by a separate agreement. However, that knowledge, i. e. mere existence of a separate agreement, does not give notice of a defense or claim unless the purchaser has notice that a defense or claim has arisen from the terms thereof. § 44–2534, subsec. D, par. 2 A.R.S. Secondly, the bank had actual knowledge of two previously issued notes which were unacceptable to it. This is not tantamount, however, to knowledge of a default in payment. Such knowledge would necessitate presentment for payment [§ 44–2560, subsec. A, A.R.S.] and dishonor [§ 44–2563, subsec. A, pars. 1 or 2, A.R.S.]. The bank had no such notice. Additionally, default in payment is not notice of a claim or defense unless it is as to one of the same series. [§ 44–2534, subsec. D, par. 6 A.R.S.]. This note embodied the entire obligation for the third time. As such, there is serious doubt as to whether this was in the nature of the series contemplated by the statute. The comments of predecessor section UCC 3–304 (3) (a), re instruments of the same series, make explicit reference to installments or other part of the principal amount due. In any event, the bank certainly had no notice of any "uncured" default. [§ 44–2534, subsec. C, par. 1 A.R.S.].

 Having established its status as a holder in due course, the bank achieves preferred status. To the extent that the bank is a holder in due course it takes the instrument free from all defenses of any party to the instrument with whom it has not dealt. § 44–2535, par. 2 A.R.S. These defenses are enumerated in § 44–2536 A.R.S. and include want of consideration and nonperformance of a condition precedent. Since these are Mr. Mecham's two defenses, it follows the bank was entitled to judgment against him. It should be noted that if the defense is in the nature of fraud it would not be fraud in the factum so as to be assertible against a holder in due course. § 44–2535, par. 2(c) A.R.S. See comments to UCC 3–305(2) (c).

FAILURE OF CONSIDERATION

Appellant, however, contends that even if the bank is a holder in due course, which we have held, that matter should be reversed as to Mr. Munson, the cross-defendant. It will be recalled that Mr. Mecham contracted with Mr. Munson to procure a permanent first mortgage loan commitment. Throughout the testimony this was referred to as a "bankable" commitment in the sense that its ostensible purpose in addition to a "takeout", was to facilitate interim financing prior to the takeover of the mortgage by Security. Mr. Mecham alleges that he never received such a "bankable" commitment and that there was therefore a failure of consideration. Mr. Munson, of course, defends that he obtained such a commitment and was therefore entitled to his fee for his services.

 It would appear that Munson was a holder. § 44–2208, par. 20 A.R.S. He was in possession of an instrument issued, i. e. delivered to him. § 44–2502, subsec. A, par. 1 A.R.S. As such, he had the right to transfer or negotiate it, discharge it, or enforce payment in his own name. § 44–2531 A.R.S. With that status alone, however, he is subject to many defenses, among them failure of consideration. See § 44–2536 A.R.S. It was never seriously contended at the trial level that the note was to be issued in return for anything other than a bankable commitment. The only serious controversy was whether a bankable commitment was obtained by Munson which would support the giving of the note by Mecham.

The findings of fact and conclusions of law, made by the trial court pursuant

to Rule 52, subd. a, Rules of Civil Procedure, 16 A.R.S., evidenced the following:

"3. The above described promissory note was executed and delivered as payment for a commission earned by Munson Mortgage and Investment Corporation by obtaining a real property mortgage commitment from Security Mutual Life Insurance Company of New York for the benefit of Mecham Investment Company, and its Stockholders, Evan Mecham, Florence Mecham, and Mecham Pontiac Corporation. * * *"

 This finding of fact subsumes, of course, that the commitment obtained was "bankable" and that ultimate consummation of the deal failed for other reasons. The trial court's findings will be disturbed only where they are clearly erroneous. Gillespie Land & Irr. Co. v. Jones, 63 Ariz. 535, 164 P.2d 456 (1946); Ashley v. Kramer, 8 Ariz.App. 27, 442 P.2d 564 (1968). Similarly, in reviewing the case, the appellate court views the evidence in a manner most favorable to sustaining the judgment. Romney Produce Company v. Edwards, 9 Ariz.App. 258, 451 P.2d 338 (1969).

 With such a view of the evidence, it would appear that Mr. Mecham evidenced his acceptance and approval of Security's offered commitment as modifed on the 20th day of February 1967. He similarly approved and acknowledged Munson's letter which set forth that the fee due Munson Mortgage was payable upon Mecham Investment's acceptance. These promised modifications were allegedly affirmed by Security on the 13th of March. It was upon this state of the evidence that the court apparently found a "bankable commitment.

"Bankability" is a term of art in the banking industry. The testimony of both banking experts reveals that the nature of such a commitment does not assume a singular form and is an organic and flexible thing. Both Mr. Bunge of Valley National Bank and Mr. Havens of First Federal Savings testified at various times as to the constant necessity of having to reconfirm items such as possible extensions, authority of corresponding agents to bind the company, appraisals, good faith deposits, credit standings, insurance, lease arrangements, etc.:

"Q Supposing, sir, in examining the commitment that was furnished you by the prospective borrower you noticed inconsistencies in it, discrepancies, things that weren't readily answered, different men signing the documents, asserting authority to do so, things that puzzled you.

Would you not, in an interim lending situation, cast aside the documents as unpalatable or would you attempt in some fashion to clarify for yourself and otherwise cure the inconsistencies, et cetera?

* * * * * *

"A I would say that seldom do you start off with a perfect commitment. There is always some change that needs to be made, clarification, our company would know what to do because after all, usually a commitment is a contract between the developer and a permanent takeout, so we either as individuals, as a loan company, would go directly back to the permanent lender or we would go directly back to the borrower in this case and ask him to procure the information for us.

There is no set rule. We might do it, the broker might do it, the borrower might do it.

The only thing is: We require that requirements be met and that we get the information."

The basic thrust of all these confirmances was to assure the intention of the company to be bound.

This is the crux of "bankability". We need not concern ourselves with the issue of whether this particular commitment is more or less bankable than most or in need

of more or less extensive clarification than most. Suffice it to say that there is substantial evidence from which the fact finder could reasonably conclude that a "bankable commitment" existed. Certainly, though it is of little consolation to appellant, this commitment was not of the "air-tight" variety. However, ultimate failure to construct the project is not synonymous with failure of consideration. It must be remembered Munson's required performance was only to procure a first mortgage loan commitment and *not* to obtain interim financing thereon. That responsibility was incumbent on Mecham. We need not speculate as to the vagaries of the intervening breakdown. Where the trial court's finding is supported by substantial evidence, it will not be disturbed on appeal. Huntsman v. First Nat. Bank, 29 Ariz. 574, 243 P. 598 (1926); In Re Holman's Adoption, 80 Ariz. 201, 295 P.2d 372 (1956); City of Phoenix v. Burke, 9 Ariz.App. 395, 452 P.2d 722 (1969).

Judgment affirmed.

HAYS, V. C. J., and LOCKWOOD, J., concur.