In the Matter of the CHASE MANHATTAN BANK (N.A.), Respondent, v STATE OF NEW YORK, Appellant, et al., Respondents.

Third Department, May 8, 1975

*Louis J. Lefkowitz, Attorney-General (Michael F. Colligan* and *Ruth Kessler Toch* of counsel), for appellant.

*Milbank, Tweed, Hadley & McCloy (Andrew J. Connick* and *Eugene F. Farabaugh* of counsel), for the Chase Manhattan Bank (N.A.), respondent.

SWEENEY, J. Petitioner, Chase Manhattan Bank (hereinafter referred to as "Chase"), commenced this proceeding seeking a judgment directing the State to turn over to petitioner certain moneys held by the Comptroller for the account of one Brown. The facts are lengthy, but not in dispute. On July 23, 1964, the State entered into a contract with Francis L. Brown, doing business as Brown Engineers, for certain survey and design work. On November 17, 1964 Brown executed promissory notes and a general security agreement for loans made or to be made to Brown by Chase. The agreement granted Chase a security interest in and to all of the personal property of Brown then existing or thereafter acquired, including, but not limited to, accounts and contract rights, together with the proceeds and products thereof. This security interest was perfected by proper filing of financing statements in December of 1964 and continuation statements were filed in November, 1969.

During the years 1966 and 1967 Chase made several loans

to Brown on which there is presently due and owing a sum in excess of $500,000. Brown's contract with the State was completed and accepted on January 31, 1968. Due to a dispute concerning the contract, however, Brown subsequently sued the State in the Court of Claims and recovered a judgment against it in the amount of $195,575.87. By stipulation dated October 18, 1972, the State withdrew its appeal and Brown agreed to accept $164,772.56 without interest in full satisfaction of the judgment. Subsequently, Chase demanded that the Comptroller turn over these moneys to it, less an amount of some $65,000 due the attorneys for Brown in the Court of Claims action. The Comptroller refused, whereupon the present proceeding was commenced pursuant to CPLR article 4.

The State asserts an alleged setoff of $8,085.64 plus interest based on warrants served on the Comptroller for unpaid State withholding taxes owed by Brown for the period of May 15, 1968 through May 15, 1969, which were filed on December 19, 1972, together with a tax collector's levy against the moneys held by the Comptroller belonging to Brown. A further setoff of $6,002.33 plus interest is asserted for tax warrants served on the Comptroller on November 24, 1972 for unpaid unemployment insurance owed by Brown during the period of July 1, 1968 through June 30, 1969. Special Term granted Chase's petition after concluding that the State had neither the legal nor equitable right of setoff. Specifically, it held that Chase had a perfected security interest in the settlement moneys which arose before and took precedence over the State's claims; that, even if the settlement moneys constitute an "account", Chase's interest had priority because the State had constructive notice of the assignment by Brown to Chase as of December, 1964 when the financing statements evidencing the security agreement were filed, and section 9-318 of the Uniform Commercial Code is, therefore, inapplicable. The State appeals from a judgment in Chase's favor.

By reason of the tax warrants and consequent levy, the State is a lien creditor. As such, its liens are entitled to no greater priority than that afforded the lien of a lien creditor, and a perfected security interest has priority over a lien creditor. (Uniform Commercial Code, §§ 9-301, 9-312.) Chase's perfected security interest attached to the proceeds of Brown's contract with the State on the date when Brown's right to payment under the contract was earned, namely, January 31, 1968. (Uniform Commercial Code, § 9-204, subd [1]; § 9-302, § 9-

306, subd [1].) It, therefore, arose before the State's claims for unpaid taxes and unemployment insurance and Chase's security interest takes precedence over such claims.

However, pursuant to section 9-318 of the Uniform Commercial Code, if the State is an account debtor, Chase, as a secured party and assignee of the debtor assignor Brown, is subject to any defense or claim that the State had against Brown before the State received notification of such assignment. Chase contends, first, that the State is not an account debtor in its generic sense since Brown's contract and all his dealings were with the Department of Transportation. This contention is without merit. Although his contract was with such department, Brown's action, the judgment resulting therefrom and the stipulation withdrawing the appeal were in the name of the State of New York. The issue thus narrows to a consideration of whether constructive notice by the proper filing of the security agreement (assignment) was sufficient to cut off the State's right to assert claims against Brown. Section 9-318 does not specify the form of notice, nor does the code's definition of "notice" expressly include constructive notice. (Uniform Commercial Code, § 1-201, subds [25] and [26].) It is quite plain, nevertheless, from a reading of section 9-318 in its entirety that its purpose is to protect the rights of an account debtor vis-á-vis an assignee of the original creditor, the assignor. In our view, to fully protect those rights, actual notice of the assignment is required. If an account debtor's right to pay the assignor is not cut off until he receives actual notice of the assignment (see Practice Commentary by Homer Kripke, McKinney's Cons. Laws of NY, Book 62½, Uniform Commercial Code, § 9-318, p 541), his right to assert claims against the assignee should not be disturbed until he has actual notice of the assignment. Since there is no information therein that should be communicated to another department or agency of the State, the filing of its financing statements with the Department of State by Chase did not constitute actual notice. (See Uniform Commercial Code, § 1-201, subds [20] and [27].) It can be easily determined from the record that the State received actual notice of the security agreement between Brown and Chase when Chase made the demand on the Comptroller for the settlement moneys. We conclude, therefore, that the State's right to assert claims for the unpaid taxes and unemployment insurance was not cut off until such demand was made. (See *Central State Bank v State of New York,* 73 Misc 2d 128.)

We further conclude that Special Term had jurisdiction to grant the judgment appealed from since the proceeding was not one to obtain a judgment against the State for a sum of money. This proceeding, on the other hand, seeks equitable relief, with a directive that the Comptroller pay out the proceeds of a judgment entered against the State, as thereafter altered by the settlement agreement between the parties.

Finally, the judgment insofar as it directs interest be paid by the State on the sum awarded Chase does not violate the terms of the stipulation between Brown and the State. The stipulation agreement provided that Brown waive interest on the amount of the settlement, and interest thereafter was not waived.

The judgment should be modified, on the law and the facts, by reducing the amount awarded by the amount of the State's liens for unpaid taxes and unpaid unemployment insurance plus interest, and, as so modified, affirmed, without costs.

HERLIHY, P. J., GREENBLOTT, KANE and REYNOLDS, JJ., concur.

Judgment modified, on the law and the facts, by reducing the amount awarded by the amount of the State's liens for unpaid taxes and unpaid unemployment insurance plus interest, and, as so modified, affirmed, without costs.