568 P.2d 414

Donald G. STEWART, Appellant,

v.

Marjorie E. THORNTON, a widow, Appellee.

No. 12779–PR.

Supreme Court of Arizona, In Banc.

July 12, 1977.

**108**

Walton, Lauinger & Friedeman by Thomas J. Lauinger, John W. Friedeman, Scottsdale, for appellant.

Behrens, MacLean & Jacques by John H. MacLean, John K. Graham, Phoenix, for appellee.

William Kanter, Dept. of Justice, Washington, D. C., for amicus curiae Housing and Urban Development.

STRUCKMEYER, Vice Chief Justice.

This is a declaratory action to determine the rights of appellant Donald G. Stewart as the holder of a promissory note. The Superior Court entered a judgment favorable to Marjorie E. Thornton, the maker, that Stewart was not a holder in due course. The Court of Appeals reversed, 27 Ariz.App. 105, 551 P.2d 95 (1976). We accepted review pursuant to 17A, A.R.S., Rules of the Supreme Court, Rule 47(b). Decision of the Court of Appeals vacated. Judgment of the Superior Court affirmed.

On May 23, 1971, Thornton signed an agreement to purchase a lot, received a deed thereto and in return executed a promissory note and mortgage on the lot in the amount of fifty-three hundred sixty-eight and 44/100 dollars ($5368.44), payable to the order of Cochise College Park, Inc. (College Park). Two days later, on May 25, 1971, Thornton rescinded the transaction. Her down payment was returned by College Park, but, on the same day, College Park assigned her note and mortgage to Stewart for a consideration of thirty-five hundred fifty dollars ($3550). Stewart received the first ten monthly payments due on the note and mortgage and only became aware of the rescission after the payments had been discontinued. The ten payments were not made by Thornton, but the record does not disclose by whom they were made.

As an affirmative defense to appellant's suit for collection of the note, Thornton set up that she had not received a property report as required by the Interstate Land Sales Full Disclosure Act, 15 U.S.C.A. § 1701, et seq., and that her rescission of the transaction made the purchase agreement, the promissory note and the realty mortgage void by operation of law, § 1703(b) of the Act.[1]

The trial court, sitting without a jury, held that Stewart was not a holder in due course[2] and that the note was subject to

---

1. "(b) Any contract or agreement for the purchase or leasing of a lot in a subdivision covered by this chapter, where the property report has not been given to the purchaser in advance or at the time of his signing, shall be voidable at the option of the purchaser. A purchaser may revoke such contract or agreement within forty-eight hours, where he has received the property report less than forty-eight hours before he signed the contract or agreement, and the contract or agreement shall so provide, except that the contract or agreement may stipulate that the foregoing revocation authority shall not apply in the case of a purchaser who (1) has received the property report and inspected the lot to be purchased or leased in advance of signing the contract or agreement, and (2) acknowledges by his signature that he has made such inspection and has read and understood such report." 15 U.S.C.A., Commerce and Trade, § 1703(b).

2. A.R.S. § 44–2532(A) states:
   "A holder in due course is a holder who takes the instrument:
   1. For value; and
   2. In good faith; and
   3. Without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."

any defenses which Thornton could assert against College Park. Her position on appeal is that Stewart was not a holder in due course because he was charged with constructive notice of § 1703(b), supra, and that he had actual knowledge of the facts which should have alerted him to possible defenses defeating his claimed status as a holder in due course. She relies on A.R.S. § 44–2534, reading:

"A. The purchaser has notice of a claim or defense if:

\*      \*      \*      \*      \*      \*

2. *The purchaser has notice that the obligation of any party is voidable in whole or in part,  \* \* \*.*" (Emphasis added)

■ We have previously defined "notice" under the UCC in *Mecham v. United Bank of Arizona,* 107 Ariz. 437, 489 P.2d 247 (1971), saying:

"As to notice of a defense or claim, it means, *minimally,* that from all the facts and circumstances known to him at the time in question one has reason to know a given fact exists.  § 44–2208, subsec. 25, par. c A.R.S.  The critical time for such notice is when the party comes into possession as a holder."  107 Ariz. at 441–442, 489 P.2d at 251–52.  (Emphasis added.)

And *see Kaw Valley State Bank and Trust Company v. Riddle,* 219 Kan. 550, 549 P.2d 927 (1976); *Jaeger & Branch, Inc. v. Pappas,* 20 Utah 2d 100, 433 P.2d 605 (1967). Notice contemplates actual knowledge of a defense or of such facts that would alert a person to a possible defense.  *Jaeger & Branch,* supra, at 110, 433 P.2d at 607.

It is sometimes said that a purchaser of a note is under no duty to ascertain from the maker the actual status of the contract arrangement.  *Third· National Bank of Nashville v. Hardi-Gardens Supply of Illinois, Inc.,* 380 F.Supp. 930, 942 (M.D.Tenn. 1974).  This is because were there such a duty, it would impose unnecessary and per-haps crippling restrictions on the free alienation of commercial paper.

■ It has been held under the Uniform Commercial Code that constructive notice of a recorded instrument is not actual notice as contemplated by the UCC, *National Security Fire and Casualty Company v. Mazzara,* 289 Ala. 542, 268 So.2d 814, 817 (1972), nor is a filed security agreement, *Chase Manhattan Bank (N.A.) v. State,* 48 A.D.2d 11, 367 N.Y.S.2d 580, 583 (1975). But notice under the UCC requires some inquiry if the purchaser has actual knowledge of facts which would apprise him of possible irregularities.  *Eldon's Super Fresh Stores, Inc. v. Merrill Lynch, etc.,* 296 Minn. 130, 207 N.W.2d 282, 287–88 (1973).  The protection afforded a holder in due course cannot be used to shield one who simply refuses to investigate when the facts known to him suggest an irregularity concerning the commercial paper he purchases.

By the express terms of § 1703(b), the sales agreement for the purchase of the lot must provide that a "purchaser may revoke such  \* \* \*  agreement within forty-eight hours, where he has received the property report less than forty-eight hours before he signed the contract or agreement, \* \* \*."  Stewart was, of course, charged with notice of the statute.  He was also charged with knowing that a purchaser who received the property report, has inspected the lot in advance of signing the sales agreement and acknowledged by his signature on the agreement that he has made such inspection and has read and understood such report, *may* stipulate in the agreement of purchase that the right to revoke for forty-eight hours shall not apply.

■ The promissory note signed by appellee, dated May 23, 1971, provided that it was delivered in payment for certain real property in College Park.  Neither the note nor mortgage indicate that the purchaser received a property report and inspected

110

the lot to be purchased in advance of their execution; neither do they show when or that a property report was received by the purchaser. Nor does the written sales agreement signed by Thornton as part of the transaction on May 23, 1971 show that she ever inspected the lot or received a property report pursuant to § 1703(b).

Here, as in *Vandam Check Cashing Corp. v. David J. Askin, Jr., Inc.* [New York City Civil Court, Kings County, March 7, 1972], there is no question of any actual notice of any infirmity in the instrument. But as the court said there:

" 'Good faith' means honesty in fact in the conduct or transaction concerned. UCC § 1–201(19). It entails the absence of bad faith and bad faith is dishonesty and absence of fidelity to the obligations of morals and honor. *Gerseta v. Wessex-Campbell Silk Co.,* [2 Cir.] 3 F.2d 236. Bad faith is not just being careless. It is guilty knowledge or wilful ignorance. *Manufacturers and Traders Trust Co. v. Sapowitch,* 286 [296] N.Y. 226, [72 N.E.2d 166]. The law does not place upon one who purchases commercial paper for *full value* before maturity the obligation to be on the alert for circumstances which might possibly excite the suspicions of wary vigilance. To defeat the title of one otherwise a holder in due course who does not have knowledge of an infirmity or defect, there must be actual bad faith. *Kittredge v. Grannis,* 224 N.Y. 168, [244 N.Y. 168, 155 N.E. 88] * * * Yet carelessness and failure to inquire under certain circumstances may constitute bad faith. See *Otten v. Marasco,* CANY 1965, 353 F.2d 563, and it has been held that gross carelessness may constitute evidence of bad faith. *Chartered Bank v. American Trust Company,* 1965, 47 Misc.2d 694, 263 N.Y.S.2d 53." 10 UCC Rptr. 839, at 841. (Emphasis added.)

In the instant case, the note was not purchased for full value. It was discounted one-third. That fact alone is sufficient to alert a prospective purchaser to a possible defense. Moreover, it was sold in the 48-hour period during which the purchaser of the property could have voided the purchase agreement. By examining the written sales agreement in possession of the seller of the note, Stewart could have ascertained that Mrs. Thornton had not inspected the lot or received a property report pursuant to § 1703(b). We think under these circumstances bad faith could have reasonably been inferred by the trial judge, and he could have concluded that Stewart was not a holder in due course within the meaning and intent of the UCC. To hold otherwise would open to rampant abuse the fraud which Congress' Act, § 1703(b), seeks to prohibit.

Judgment of the trial court is affirmed.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.