■ DAYTON, PRICE AND COMPANY, LTD., Respondent, v FIRST NATIONAL CITY BANK, et al., Appellants, et al., Defendants.—Judgment, Supreme Court, New York County, entered October 18, 1977, affirmed, with one bill of $60 costs and disbursements of this appeal to respondent. Accepting the facts as stated in the dissent, we perceive no benefit in remanding for trial of a nonexistent factual issue. It defies reality to think that Zeltser could have formed an intent to misappropriate any particular checks prior to his operation of the facsimile signature machine; he had nothing to do with

placing any particular payee's name on a check. At that point, all the checks he handled were possible grist to his mill and none would be available for successful stealing until rendered cashable by impression of the signature. There would have been no point in exercising a choice until then. We find as a fact that no intent was formed to misappropriate any particular check until after it had been "signed." Zeltser's evidence that he formed his intent as to these three checks before impressing the signatures we find to be inherently incredible, and certainly suspect in the circumstances of this case. Though the trial court made no specific finding on this point, quite obviously rejection of this evidence is inherent and implicit in the conclusion arrived at. Concur—Silverman, Evans, Lane and Markewich, JJ.; Murphy, P. J., dissents in part in a memorandum, as follows: In this action, plaintiff Dayton seeks to recover the proceeds of 24 of its checks that were deposited with Chase and eventually paid by First National or Manufacturers Hanover. The checks were fraudulently cashed and the proceeds diverted in a scheme that involved (1) Gary Zeltser, a supervisory accountant for plaintiff; (2) Daniel Boyle, an assistant branch manager for Chase; and (3) one Walter Hannon. The case was submitted to Trial Term upon two agreed statements of fact and the testimony contained in three examinations before trial. The trial court properly dismissed plaintiff's cause of action against Chase for its lack of privity with that collecting bank *(Trojan Pub. Corp. v Manufacturers Trust Co., 298 NY 771)*. The court then took cognizance of the fact that the primary defense of the drawees, First National and Manufacturers Hanover, was based on sections 3-405 (subd [1], par [b]) and 3-405 (subd [1], par [c]) of the Uniform Commercial Code. However, it never reached the merits of that defense since it made the following finding: "The court find *[sic]* that there was notice to Chase on the face of the instruments, of the irregularities of the transactions and that, as to Chase, such notice called their validity into question. Such notice precludes it from holder in due course status. Under these circumstances Chase cannot assert its status as a holder in due course. Consequently it cannot, nor can either of the drawee banks, assert UCC Sec. 3-405 (1)(b) to defeat liability. *(Chartered Bank v. American Trust Co.* 47 Misc. 2d 694 [Sup. Ct. NY. Co. 1965]). (See *McCommico v. Third National Bank in Nashville,* 499 S.W.2d 874 [Sup. Ct. Tenn. 1973]; *The Prudential Insurance Co. of America v. Marine National Exchange Bank of Milwaukee,* 371 F. Supp. 1002 [E.D. Wisc. 1974])." The court awarded judgment to the plaintiff against the drawees and it awarded judgment over on the drawees' cross claims against the collecting bank for breach of its guarantee of all prior indorsements. Even if it be assumed that Chase had notice of the irregularities and that it acted in bad faith, the authorities cited by the trial court do not support the proposition that such notice and bad faith must be imparted to First National and Manufacturers Hanover. Moreover, the record is devoid of any indication that the drawees had knowledge of any irregularities; the parties, in fact, stipulated that the drawees had acted in good faith. Consequently the court did not, but should have, addressed itself to the drawees' affirmative defense under sections 3-405 (subd [1], par [b]) and 3-405 (subd [1], par [c]) of the Uniform Commercial Code. I now do so. The foregoing sections read as follows: "(1) An indorsement by any person in the name of a named payee is effective if * * * (b) a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument; or (c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest." Each of the 24 checks, that were fraudulently cashed, had the plaintiff's authorized signa-

ture imprinted thereon by means of a facsimile machine maintained in the accounting department. Normally, the actual operation of the facsimile machine was by one of the two clerks in that department under the control of Walter Feeney, an assistant treasurer, or in his absence, of Zeltser. The authorized signatures on 21 of the checks were imprinted when Feeney was in actual or constructive charge of the operation. Hence, as to those 21 checks, it can not meritoriously be argued that Zeltser "signed" them, either literally or figuratively under section 3-405 (subd [1], par [b]) of the Uniform Commercial Code. However, the proof does show that Zeltser physically impressed the signatures on three of the checks. He also testified that he intended to convert the checks even before they were forwarded for the authorization signature. That testimony presents a matter of credibility for the trier of fact. It is possible, as plaintiff contends, that he only decided to convert the checks after the authorized signature was imprinted upon them. As was noted, the trial court never reached this factual issue. Hence, the issue of whether Zeltser signed the three checks with the intention that the particular payees have no interest must be decided by the trial court upon remand of that matter (Uniform Commercial Code, § 3-405, subd [1], par [b]). Contrary to the majority's assertion, I do not find Zeltser's testimony in this area to defy reality or to be incredible as a matter of law. Zeltser may well have chosen the three checks in question because the amounts and payees thereof lent themselves to this fraudulent scheme. There is no merit to the defense raised under section 3-405 (subd [1], par [c]) of the Uniform Commercial Code. Zeltser did not supply the plaintiff with the names of the three payees. The names of the payees had been previously printed upon the partially completed checks forwarded from the data processing department to the accounting department. Accordingly, I would modify the judgment of the Supreme Court, New York County, entered October 18, 1977, by vacating so much thereof as awarded judgment and judgment over on the three checks upon which Zeltser placed the authorized signatures, by remanding that matter to trial term for a determination of whether Zeltser intended the payees to have any interest when he imprinted the authorized signatures on the three checks, and, as modified, I would otherwise affirm the judgment.