**MONEY MART CHECK CASHING CENTER, INC., Petitioner,**

v.

**EPICYCLE CORPORATION, a Colorado corporation, Respondent.**

**No. 82SC207.**

Supreme Court of Colorado, En Banc.

Aug. 22, 1983.

Karla Niernberger, Denver, for petitioner.

Frank McHugh, pro se, agent for Epicycle Corp.

ROVIRA, Justice.

The Denver Superior Court held that Money Mart Check Cashing Center, Inc. (Money Mart), was not a holder in due course of a particular check. We granted certiorari and now reverse.

Money Mart cashes payroll and government checks for a fee. Epicycle Corporation is a Colorado employer that pays its employees by check. On February 16, 1980, Epicycle issued a payroll check, payable to

John Cronin, in the amount of $278.59. During the term of his employment, Cronin had borrowed money from Epicycle to be offset by subsequent wages.

The sequence of events is not clear, but Cronin's employment was terminated, and an Epicycle employee who was unaware of Cronin's indebtedness gave Cronin his final payroll check. Epicycle ordered payment on the check stopped. Cronin cashed the check at one of Money Mart's locations on February 22, 1980. Money Mart deposited the check, sending it through normal banking channels. The check was returned to Money Mart marked "Payment Stopped."

Money Mart brought suit in the Small Claims Division of the Denver County Court for the amount of the check, claiming that as a holder in due course of the dishonored check it was entitled to recover from Epicycle.[1] Judgment was entered in favor of Money Mart for $278.59.

The Denver Superior Court reversed, holding that Money Mart was negligent in not verifying that the check was good prior to cashing it and was therefore not entitled to holder-in-due-course status. The court based its decision, at least in part, on the fact that Money Mart is in the business of cashing checks.

The question before us is whether Money Mart is a holder in due course. If it is, it takes the check free of any of Epicycle's claims to the check or defenses against Cronin. *See* section 4–3–305, C.R.S.1973. Section 4–3–302(1), C.R.S.1973, provides:

"(1) A holder in due course is a holder who takes the instrument:

(a) For value; and

(b) In good faith; and

(c) Without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."

That Money Mart took the check for value is undisputed, leaving the questions of "good faith" and "notice."

■ "Good faith" is defined as "honesty in fact in the conduct or transaction concerned." Section 4–1–201(19), C.R.S.1973. The drafters of the Uniform Commercial Code intended that this standard be a subjective one. J. White & R. Summers, *Uniform Commercial Code* 562 (2d ed. 1980). Thus, the question is: "[W]as this alleged holder in due course acting in good faith, however stupid and negligent his behavior might have been?" *Id. See also Kaw Valley State Bank & Trust Co. v. Riddle*, 219 Kan. 550, 549 P.2d 927 (1976); *Industrial National Bank v. Leo's Used Car Exchange*, 362 Mass. 797, 291 N.E.2d 603 (1973).

■ The only testimony on the question of good faith is that Money Mart cashed the check without knowing that a stop payment order had been issued on it. The Superior Court concluded that Money Mart was not a holder in due course because it "did not inquire as to the check itself and had no knowledge as to whether the check was stolen, incomplete, or secured by fraud." Under a subjective standard, an absence of knowledge is not equivalent to a lack of good faith. *See Breslin v. New Jersey Investors, Inc.*, 70 N.J. 466, 361 A.2d 1 (1976); *Richardson Co. v. First National Bank*, 504 S.W.2d 812 (Tex.Civ.App.1974). Consequently, if the Superior Court's reversal was based upon a lack of good faith on the part of Money Mart, it was in error.

■ We now consider whether Money Mart had "notice" of the fact that payment had been stopped on the check or that Cronin had obtained the check improperly. A person has "notice" of a fact when:

"(a) He has actual knowledge of it; or

(b) He has received a notice or notification of it; or

1. Section 13–6–407, C.R.S.1973 (1982 Supp.), provides that a corporation may commence or defend an action in small claims court. Any full-time officer or full-time employee may represent the corporation. The Colorado General Assembly recently enacted An Act Concerning Representation of a Closely Held Corporation by a Corporate Officer Before Adjudicatory Bodies, S. 361, 54th Gen. Assem., 1st Sess., 1983 Colo.Sess.Laws, which provides that a closely-held Colorado corporation (three or fewer shareholders) may be represented before any court of record by a duly-elected officer if certain conditions are met.

(c) From all the facts and circumstances known to him at the time in question he has reason to know that it exists."

Section 4–1–201(25), C.R.S.1973. As can be seen, tests other than "actual knowledge" may be used in determining whether a person is a holder in due course. *See Gross v. Appelgren,* 171 Colo. 7, 467 P.2d 789 (1970). There is no allegation that Money Mart had received notification of the defenses, so we must now determine whether Money Mart had "reason to know" of them.

The County Court referee found that Money Mart had no reason to know of the defenses because there was nothing inherently suspicious in the transaction and Money Mart had no duty to inquire about any possible defenses or ensure that the check was good. The Superior Court held that Money Mart's failure to inquire about the validity of the check constituted negligence. However, there is nothing in the Uniform Commercial Code and nothing in the record to support such a conclusion.

A determination of whether a holder has "reason to know" is based upon "all the facts and circumstances known to him." A person "knows" of a fact when he has "actual knowledge" of it. Section 4–1–201(25)(c). The question therefore is whether Money Mart had actual knowledge of facts giving it reason to know that a defense existed. There is nothing to distinguish the facts of this case from any other of the thousands of checks that Money Mart and others cash each year: A man came to Money Mart to cash his paycheck; Money Mart is in the business of cashing paychecks; the face of the check disclosed nothing to raise even a suspicion that there was something wrong with it.

It has often been held that where an instrument is regular on its face there is no duty to inquire as to possible defenses unless the circumstances of which the holder has knowledge are of such a nature that failure to inquire reveals a deliberate desire to evade knowledge because of a fear that investigation would disclose the existence of a defense. *See, e.g., General Investment Corp. v. Angelini,* 58 N.J. 396, 278 A.2d 193 (1971); *Jaeger & Branch, Inc. v. Pappas,* 20 Utah 2d 100, 433 P.2d 605 (1967). There is nothing in using a check-cashing service instead of a bank that would lead to a rule imposing different standards on the two kinds of institutions. *See Northern Currency Exchange, Inc. v. Strichman,* 9 UCC Rep. 705 (N.Y.Sup.Ct.1971).

Accordingly, we hold that Money Mart is a holder in due course and, as such, is not subject to the defenses Epicycle may have against Cronin. Epicycle raises other arguments concerning the question of Money Mart's entitlement to holder-in-due-course status that we find to be without merit.

The judgment of the Superior Court is reversed, and the cause is remanded to the Superior Court with directions to remand to the County Court for reinstatement of the judgment in favor of Money Mart.