**NORTHWESTERN NATIONAL INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**Anthony J. MAGGIO, Defendant– Appellant.**

**No. 92–1037.**

United States Court of Appeals, Seventh Circuit.

Argued Aug. 5, 1992.

Decided Sept. 23, 1992.

John A. Rothstein, Richard C. Ninneman (argued), Quarles & Brady, Milwaukee, Wis., for plaintiff-appellee.

David M. Kozak, Jerry L. Cochran (argued), Cheifetz, Pierce, Cochran, Kozak & Mathew, Phoenix, Ariz., for defendant-appellant.

Before POSNER and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

POSNER, Circuit Judge.

This diversity suit on a promissory note was brought by Northwestern National Insurance Company against the note's maker, Anthony Maggio. The district court, holding that Northwestern was a holder in due course and had therefore taken the note free of any defenses Maggio might have had to a suit by the promisee, gave judgment for Northwestern on the latter's motion for summary judgment.

In 1981 Maggio had purchased a limited partnership in a new venture created by a former astronaut to develop an optoelectronic scanner designed to provide perimeter security for sprawling properties such as airfields, oil fields, and pipelines. As consideration for his partnership interest Maggio gave the partnership a noninterest-bearing note for $55,000 maturing October 31, 1990. The partnership negotiated the note to a venture-capital company that in turn negotiated it to Goldman Sachs which in 1988 negotiated it to Northwestern, along with other notes of the limited partners, at a 50 percent discount. When the note matured on October 31, 1990, Northwestern demanded payment from Maggio of the full face amount. He refused.

Maggio claims that he was induced to purchase the limited partnership by fraud. If so he has of course a claim against the partnership itself and perhaps the general partner and others, but he has no claim against Northwestern if the latter is a holder in due course. It is not if (so far as relevant here) it either did not take the note "in good faith" or "purchas[ed] it as part of a bulk transaction not in the regular course of business of the transferor." UCC §§ 3–302(1)(b), (3)(c) (1987); Ariz.Rev. Stat. §§ 47–3302(A)(2), (C)(3). We take up these questions in reverse order, and ignore Maggio's frivolous argument of judicial estoppel. The note recites, and the

parties agree, that disputes concerning it are to be resolved under the law of Arizona, where the partnership was formed.

■ The rarely litigated bulk-transfer exception identifies a narrow class of transactions where the purchaser of the (otherwise) negotiable instrument ought to be suspicious that the seller may be trying to thwart promisors' defenses and prefer one creditor over others, or committing outright fraud (the transferee might be a successor of the transferor), perhaps en route to bankruptcy. The existence of those defenses makes the promisors creditors; the wholesale transfer of their notes to a "holder in due course" would extinguish the promisors' claims; and the fact that the transfer is not in the ordinary course of business reinforces the inference that the transfer is an attempt to extinguish creditors' claims. *P P Inc. v. McGuire,* 509 F.Supp. 1079, 1084 (D.N.J.1981), and references cited there. There is no indication that the sale by Goldman Sachs of the limited partners' notes to Northwestern was of this character. Bulk transfer it was, but there is no evidence that Goldman Sachs, a large investment bank, was acting outside the ordinary course of its business in making such a transfer. *Combine Int'l v. Berkley,* 141 App.Div.2d 465, 467–68, 529 N.Y.S.2d 790, 793 (1988).

■ The more substantial issue is whether the 50 percent discount at which Northwestern bought the note should have made Northwestern inquire into the possible existence of defenses. Maggio does not argue that the discount itself established bad faith—only that it was a sufficiently suspicious circumstance to make Northwestern guilty of ostrich conduct, or more precisely to raise a jury issue and thus forestall summary judgment. Bad faith is a conscious state but it includes the deliberate avoidance of inquiry by one who fears what inquiry would bring to light. *Bosco v. Serhant,* 836 F.2d 271, 276 (7th Cir. 1987); *United States v. Ramsey,* 785 F.2d 184, 189 (7th Cir.1986).

Northwestern reminds us that a noninterest-bearing note at fixed maturity *must* sell at a discount. *Funding Consultants,*

*Inc. v. Aetna Casualty & Surety Co.,* 187 Conn. 637, 644–46, 447 A.2d 1163, 1166–67 (1982). No one will pay $1,000 today for the right to receive $1,000 in two years, and Northwestern bought Maggio's note from Goldman Sachs two years before it was to mature. But a 50 percent discount on a note bought two years before maturity implies an interest rate of about 40 percent a year, and Maggio asks us to infer that no one would compensate the buyer of a note at such a rate unless the promisor had defenses (we do not know whether Goldman Sachs was a holder in due course). But this overlooks an obvious reason for the discount besides compensation for the time value of Northwestern's money—the risk that Maggio, even if he had no defenses to a suit for collection brought by the original promisee, would raise some anyway, as he has done, or wouldn't have the assets to pay the note when it matured. A bird in the hand is said to be worth two in the bush. Goldman Sachs got the bird in the hand; Northwestern got the two birds in the bush.

The fact that a note is sold at a discount is thus not in itself a suspicious circumstance that triggers a duty of inquiry by the buyer. *U.S. Finance Co. v. Jones,* 285 Ala. 105, 108, 229 So.2d 495, 498 (1969); *Credit Adjustment Co. v. McCormick,* 198 Okla. 348, 350, 178 P.2d 610, 612 (1947); *Overseas Credit Corp. v. Cal–Tech Systems, Inc.,* 20 App.Div.2d 355, 358–60, 247 N.Y.S.2d 252, 255–57, aff'd, 14 N.Y.2d 909, 252 N.Y.S.2d 316, 200 N.E.2d 859 (1964); *Szczotka v. Idelson,* 228 Cal.App.2d 399, 404, 39 Cal.Rptr. 466, 470 (1964); *Hatton v. Money Lenders & Associates, Ltd.,* 127 Ill.App.3d 577, 581–83, 82 Ill.Dec. 826, 469 N.E.2d 360, 363–64 (1984); *Johnson v. Citizens & Southern Bank,* 144 Ga.App. 515, 517, 241 S.E.2d 625, 626 (1978). This would hardly be worth saying but for a sentence in an opinion by the Supreme Court of Arizona that, because this case is governed by Arizona law, we must take with more than ordinary seriousness: "That fact alone [that the note was purchased at a 33 percent discount] is sufficient to alert a prospective purchaser to a possible de-

fense." *Stewart v. Thornton,* 116 Ariz. 107, 110, 568 P.2d 414, 417 (1977). Well, but as in other cases in which such dicta appear, such as *Winter & Hirsch, Inc. v. Passarelli,* 122 Ill.App.2d 372, 377–79, 259 N.E.2d 312, 315–16 (1970), and *Financial Credit Corp. v. Williams,* 246 Md. 575, 584, 229 A.2d 712, 716 (1967) (where the discount was 80 percent), that fact didn't stand alone. The note had been sold (at the discount) within the 48–hour period in which the buyer of the property in exchange for which the note was issued was entitled under Arizona law to rescind the purchase. The court held that the buyer of the note was charged with knowing the law and therefore would be assumed to have known when it bought the note that the maker had a defense against the note's seller (the promisee). The discount merely reinforced the inference of knowledge. In our case, the discount stands alone.

"[A]lone ..." It is *conceivable* that by use of this word the Supreme Court of Arizona intended to revolutionize the law of negotiable instruments, bore a large hole in negotiability, and thereby raise transaction costs in financial markets. But nothing in the opinion besides that one word suggests any such perverse ambition. Judicial opinions are frequently drafted in haste, with imperfect foresight, and without due regard for the possibility that words or phrases or sentences may be taken out of context and treated as doctrines. We shouldn't like this done to our opinions and are therefore reluctant to do it to the opinions of other courts. No court, even a federal court in a diversity suit, is obliged to treat a dictum of another court (or, for that matter, its own dicta) as binding precedent. *Walker v. Felmont Oil Corp.,* 240 F.2d 912, 917 (6th Cir.1957); *Sarnoff v. American Home Products Corp.,* 798 F.2d 1075, 1084 (7th Cir.1986); *Cole v. Young,* 817 F.2d 412, 418 (7th Cir.1987); *Society of Separationists, Inc. v. Herman,* 939 F.2d 1207, 1211 (5th Cir.1991), aff'd en banc, 959 F.2d 1283 (1992). The dictum in *Stewart* does not persuade us that the courts of Arizona would hold that the purchase of a promissory note at a discount is alone enough to defeat negotiability by requiring

the buyer to determine whether, were he the original promisee, the promisor would have a defense to a suit for collection. We add that no court in Arizona (or for that matter anywhere else) has ever cited *Stewart* for that proposition, though the case is now fifteen years old.

AFFIRMED.