**BRICKS UNLIMITED, INC.**
**Plaintiff-Appellant,**

v.

**Ralph L. AGEE, et al.,**
**Defendants-Appellees.**

**No. 81–4346**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

April 15, 1982.

Bennett, Lotterhos & Sulser, Joseph E. Lotterhos, Craig M. Geno, Jackson, Miss., for plaintiff-appellant.

Leon A. Crist, Metairie, La., for defendants-appellees.

Before GEE, GARZA and TATE, Circuit Judges.

TATE, Circuit Judge:

This interpleader action involves two principal issues. The first issue is whether a holder in due course of a negotiable instrument is entitled to priority of payment over a judgment creditor of the instrument's payee, where, prior to transfer of the instrument to the holder in due course, the creditor has caused a writ of garnishment to be served upon the maker of the instrument. We agree with the district court that, in such a situation, the holder in due course is entitled to priority.

The second issue concerns whether, under Louisiana community property law, the separate property of the wife of a judgment debtor can be garnished to satisfy the husband's judgment creditor. We agree with the district court that the wife's property cannot be garnished. Nevertheless, under the facts of this particular case, we modify the method used by the district court to determine the order of distribution of the interpleaded funds so as to hold the wife liable from her separate property for her own obligation to another claimant to the interpleaded funds.

I. *The Factual Background*

The facts are undisputed and are not complicated, but they give rise to novel legal issues in a number of fields, including choice of law, negotiable instruments law, community property law, and the law of garnishment in enforcement of judgments. In 1976, Ralph Agee and his wife, Shelby Agee, were domiciled in Louisiana. On April 4, 1976, Ralph Agee executed a demand note in favor of Bricks Unlimited, Inc., a Louisiana corporation. Mr. Agee signed the note individually and as president of Agee Construction Co., Inc.

Some time later, the Agees moved to Mississippi and became domiciliaries of that state. They purchased a home in Jackson, Mississippi. The demand note in favor of Bricks Unlimited, however, was left unpaid.

After amicable demands for payment of the note produced no results, Bricks Unlimited brought a diversity action on the note against Ralph Agee in Mississippi federal district court on October 26, 1978. Bricks Unlimited prevailed in its suit and obtained a final judgment, dated September 26, 1979, in the amount of $17,031.80, plus interest. Agee did not appeal.

On October 31, 1979, shortly after the final judgment was rendered, the Agees sold their Mississippi home to Dena Sutton. As partial consideration for this property, Sutton gave the Agees a $15,000 promissory note (the "Sutton note"), which was secured by a deed of trust on the purchased property. After selling the property to Sutton, the Agees returned to Louisiana, where they have lived ever since.

After recording its judgment in accordance with Mississippi law, Bricks Unlimited caused a writ of garnishment to be served on Dena Sutton on February 6, 1980.[1] Sutton answered the writ on February 25, 1980. She admitted that she was indebted to Ralph Agee "and [his] wife, Shelby Agee, jointly, in the sum of $15,000 [plus interest], evidenced by a promissory note and deed of trust in said sum payable to said parties."

On February 6, when the writ was served on Sutton, the Sutton note and the deed of trust were in the possession of the Agees. However, on February 15, 1980, prior to the time Sutton answered the writ, the Agees pledged the note and the deed to the Commercial Bank and Trust Company of Metairie, Louisiana (the "Bank"), as security for a $10,000 loan. Ralph and Shelby Agee bound themselves *in solido* (jointly and severally) to repay this loan. The Bank was not aware of the garnishment at the time it accepted the Sutton note as collateral for this $10,000 loan.

The Sutton note became due on October 31, 1980. On that date, Sutton, noting that the Bank and Shelby Agee were claiming an interest in the garnished debt, interpleaded the full $16,425 due on the note into the registry of the federal district

---

1. Pursuant to Rule 69, Fed.R.Civ.Pro., the district court conducted the garnishment proceedings in accordance with the practice and procedure of Mississippi law. *See* Miss.Code §§ 11–35–1 *et seq.*

court (as permitted under Mississippi law, *see* Miss.Code § 11–35–41) in the garnishment proceedings there pending. Bricks Unlimited claimed entitlement to the entire amount in satisfaction of its judgment. Shelby Agee claimed a one-half interest in the proceeds. The Bank claimed an interest to the extent of the unpaid balance on its $10,000 loan to the Agees.[2]

On cross-motions for summary judgment, the district court awarded one-half of the deposited funds, plus one-half of the interest accrued while the funds were on deposit, to Shelby Agee. With respect to the remaining half of the deposited funds and accrued interest, the court awarded the Bank $7,466 (the balance remaining on the $10,000 loan), and the court allowed Bricks Unlimited only the residue. Accordingly, the funds were distributed as follows: $8,403.68 to Shelby Agee; $7,466 to the Bank; and $937.67 to Bricks Unlimited.

Only Bricks Unlimited has appealed. We find that the Bank's claim is superior to Bricks Unlimited's claim, and we affirm the district court's judgment to this effect. However, because the Agees were liable to the Bank *in solido*, we find that Shelby Agee is only entitled to one-half of the fund *after* deduction of the Bank's $7,466 share. She is not entitled to one-half of the fund "off the top", as the district court decreed. Accordingly, in this respect, we modify the lower court's judgment.

II. *The Bank, as a Holder in Due Course, is Entitled to First Priority With Respect to the Interpleaded Funds*

The Bank claims that the Sutton note is a negotiable instrument and that, as a holder

in due course of this instrument, it is entitled to priority of payment over Bricks Unlimited, the garnishing creditor. We agree.

The litigants disagree as to whether Louisiana or Mississippi law governs this aspect of the action, but we need not decide this issue, because both states have adopted article 3 of the Uniform Commercial Code ("UCC"), which governs negotiable instrument law. *See* La.R.S. §§ 10:3–101 *et seq.*; Miss.Code §§ 75–3–101 *et seq.* The Louisiana and Mississippi negotiable instruments provisions are identical.

It is undisputed that the Sutton note was a negotiable instrument. The issue is whether the Bank was a holder in due course of this instrument.

■ The Bank undisputedly was a "holder" of the Sutton note, because the instrument was delivered to the Bank with the necessary endorsements of both Ralph and Shelby Agee. *See* UCC § 3–202(1). Under the UCC, a holder in due course is a holder who takes a negotiable instrument: 1) for value, 2) in good faith, and 3) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person. UCC § 3–302. The Bank took the note "for value," because a holder who takes a negotiable instrument as collateral for a loan takes "for value" within the meaning of the UCC. *See* UCC § 3–303(a); *Millman v. State Nat'l Bank*, 323 A.2d 723, 725, 15 UCC Rep.Serv. 413 (D.C.App.1974).[3] And the bank took in good faith and without notice of any claims, because it is undisputed that

---

**2.** The parties have not addressed the question whether the district court possessed the requisite subject matter jurisdiction to entertain this interpleader action. We are convinced, however, that the court did have jurisdiction. There may not have been an independent basis for subject matter jurisdiction under 28 U.S.C. § 1335 (because arguably there is no diversity between any of the claimants) or under 28 U.S.C. § 1332 and Rule 22, Fed.R.Civ.Pro. (because arguably there was not complete diversity between the stakeholder and all claimants). In any event, however, the court had ancillary subject matter jurisdiction. The interpleader

action, filed in proceedings to enforce the diversity-action judgment, was ancillary to the original diversity action properly brought by Bricks Unlimited. *Cf.* 3A Moore's Federal Practice ¶ 22.04 [2.–1], at 22–21 to 22–24 (1979).

**3.** The written loan agreement between the Agees and the Bank states only that the deed of trust was pledged as collateral for the loan. The promissory note is not mentioned. However, William Ryan, an official of the Bank, testified in his uncontradicted deposition that the Bank took the Sutton note as security for the $10,000 loan to the Agees.

the Bank was not aware of the Bricks Unlimited claim at the time the Agees negotiated the note to the Bank. Therefore, the Bank was a holder in due course of the Sutton note, so it took the instrument "free from all claims to it on the part of any person." UCC § 3–305(1).

Bricks Unlimited claims that the Bank is not a holder in due course, because the Sutton note was secured by a deed of trust on real property in Mississippi. Thus, according to Bricks Unlimited, the Bank should have checked the title to the real property by examining the Mississippi public records. Had the Bank made such a title examination, Bricks Unlimited argues, the Bank would have discovered the recorded judgment against Ralph Agee.

■ This argument might have some validity if the Bank were now claiming some interest in the real property. However, the negotiability of a note is in no way affected by the existence of collateral security. *See* UCC § 3–112(1)(b). The Bank does not lose its status as a holder in due course because it failed to check the public records. *See* UCC § 3–304(5). The rule under the UCC is that, in the absence of anything to warn him to the contrary, one who takes a negotiable instrument may assume that the persons with whom he deals are acting honestly and in good faith. The imposition of a duty to make inquiry as to all possible claims "would so burden such transactions as to create insuperable impediments to the free exchange of negotiable paper, an indispensable part of modern business." *Jaeger & Branch, Inc. v. Pappas,* 20 Utah 2d 100, 433 P.2d 605, 607–08, 4 UCC Rep.Serv. 950 (1967). *See also General Investment Corp. v. Angelini,* 58 N.J. 396, 278 A.2d 193, 197, 9 UCC Rep.Serv. 1 (1971) (failure to inquire precludes holder in due course status only if circumstances reveal a deliberate desire on the part of the holder "to evade knowledge because of a belief or fear that investigation would disclose a defense [or claim]"); *Corporacion Venezolana de Fomento v. Vintero Sales,* 452 F.Supp. 1108, 1119–20 (S.D.N.Y.1978), *remanded mem.,* 607 F.2d 994 (2d Cir. 1979).

■ Bricks Unlimited next argues that the Bank is "estopped" from asserting holder in due course status because the Bank, after learning of Bricks Unlimited's claim, executed two renewal notes with respect to the $10,000 loan to the Agees, which itself was secured by the Sutton note. In addition, the Bank changed the interest rate on the loan, accepted payments in reduction of the indebtedness, and required the Agees to obtain the signature of another person as an endorser. However, the Bank at all times continued to hold the Sutton note, and therefore the Bank remained a holder in due course, notwithstanding any actions it took to protect its interests after learning of the adverse claim to the Sutton note. Knowledge learned subsequent to the time of negotiation of an instrument does not impair holder in due course status. *See* UCC § 3–304(6); *Sullivan v. United Dealers Corp.,* 486 S.W.2d 699, 701, 11 UCC Rep.Serv. 810 (Ky.1972); *Crest Finance Co. v. First State Bank,* 37 Ill.2d 243, 226 N.E.2d 369, 373, 4 UCC Rep.Serv. 79 (1967); *Waterbury Savings Bank v. Jaroszewski,* 4 Conn.Cir. 620, 238 A.2d 446, 448, 4 UCC Rep.Serv. 1049 (1967).

■ Because the Bank was a holder in due course of the Sutton note, it is entitled to first priority with respect to the interpleaded funds. As noted previously, a holder in due course takes the instrument "free from all claims to it on the part of any person." UCC § 3–305(1). This provision means that the holder in due course "takes the instrument free ... from all liens, equities or claims of any other kind." UCC § 3–305, Official Comment 2. In effect, therefore, the UCC reaffirms the traditional rule that, in order to protect the marketability of commercial paper, the claim of a holder in due course is superior to that of a garnishing creditor, even if the instrument was negotiated after service of a writ of garnishment. *See, e.g., Davis v. First Nat'l Bank of Harlingen,* 135 S.W.2d 259, 261 (Tex.Civ.App.1939); 6 Am.Jur.2d, Attachment & Garnishment § 489 (1963); 38 C.J.S. Garnishment § 102, at 310–11 (1943). *See also* Drake, A Treatise on the Law of

Suits by Attachment §§ 582–92 (2d ed. 1858); *R. F. Walden & Co. v. Yates*, 111 Miss. 631, 71 So. 897, 899 (1916) (en banc) ("If promissory notes ... are subject to judgment liens their negotiability will be thereby practically destroyed; it is therefore hardly possible that the Legislature so intended.").

In view of the aforementioned principles, we affirm the district court's judgment awarding the Bank $7,466.

III. *Shelby Agee Is Not Liable for her Husband's Debt to Bricks Unlimited*

Bricks Unlimited obtained its judgment against Ralph Agee based upon a promissory note that was signed by Mr. Agee both individually and as president of Agee Construction Co., Inc. The note was not signed by Shelby Agee. At the time Ralph Agee executed this note, he and his wife, Shelby Agee, were residents of Louisiana. Relying on *Silverstein v. United States*, 349 F.Supp. 527, 530 n. 3 (E.D.La.1972), Bricks Unlimited argues that, even though Shelby Agee did not sign the note, the debt obligated the community of acquets and gains in which the wife was a partner. Thus, Bricks Unlimited claims entitlement to the portion of the interpleaded funds deemed by the court below to be the property of Shelby Agee.

■ The flaw in this argument is that, even assuming that, under Louisiana law, the debt is a community obligation of the Agees, see La.Civ.Code art. 2360, and further assuming that, under Mississippi conflict of law rules, Louisiana community property law would be deemed applicable, Shelby Agee's share of the proceeds from the Sutton note still would not be subject to garnishment by Bricks Unlimited to satisfy its judgment against Ralph Agee. This is because a community obligation may be sat-

isfied only from community property and from the separate property of the spouse who incurred the obligation. La.Civ.Code art. 2345.[4] The Sutton note at issue was for the unpaid portion of the sales price of the Mississippi home, which was jointly owned by the Agee spouses, and their note was made payable to both spouses in payment of their respective one-half separate interests in the home. Therefore, because Shelby Agee did not incur the obligation to Bricks Unlimited, this obligation cannot be satisfied with Shelby Agee's separate assets (i.e., her share of the sales price attributable to her separate, i.e., noncommunity, interest), even if the indebtedness to Bricks Unlimited is a community obligation.

■ Bricks Unlimited does not, and cannot, claim that Shelby Agee's share of the proceeds from the Sutton note is Agee community property. Dena Sutton gave the Agees the Sutton note as partial payment for the Agee's home in Mississippi, which Sutton purchased from the Agees. Louisiana does not purport to apply its community property laws to immovable property not located within the state. *See* La.Civ. Code art. 10. The usual rule is that marital rights to immovable property are determined by reference to the law of the situs of the property. *See* ALI, Restatement (Second) of Conflicts of Law § 234 (1971); de Funiak & Vaughn, Principles of Community Property 226–27 (2d ed. 1971). Thus, because Mississippi is not a community property state, Shelby Agee's one-half interest in the Mississippi property (which was titled in the names of *both* spouses) was separate, not community. Thus, Mrs. Agee's share of the proceeds from the sale of her separate interest in the property must be deemed to be her separate property, because, even under Louisiana law,

---

4. Article 2345, La.Civ.Code, went into effect on January 1, 1980. It provides: "A separate or community obligation may be satisfied during the community property regime from community property and from the separate property of the spouse who incurred the obligation." The indebtedness was incurred in 1976. Even if article 2345 does not apply retroactively, however, Mrs. Agee's separate property could not

be used to satisfy an Agee *community* debt. Under the former Louisiana community property law, a wife's separate property could not be used to satisfy a community obligation. *See* La.Civ.Code art. 2403 (repealed); *Mitchell v. Commissioner of Internal Revenue*, 430 F.2d 1, 4–5 (5th Cir. 1970); *rev'd on other grounds*, 403 U.S. 190, 91 S.Ct. 1763, 29 L.Ed.2d 406 (1971).

property acquired by a spouse with a separate asset is a separate asset of the acquiring spouse. La.Civ.Code art. 2341. Accordingly, Bricks Unlimited cannot garnish Shelby Agee's share of the proceeds from the Sutton note.

## IV. *Shelby Agee Is Only Entitled to One-Half of the Excess of the Interpleaded Funds After Payment to the Bank*

In the proceedings below, Shelby Agee and the Bank were represented by the same counsel, and their submissions were filed jointly. In their initial joint pleading setting forth their claims to the interpleaded funds, "Shelby Agee pray[ed] that one-half of the *remaining balance* of the funds paid into Court by Dena Sutton, *after* satisfaction of [the Bank's claim], be paid over to her." (Emphasis added). However, without amending this initial pleading, the Bank and Mrs. Agee requested a different method of distribution in their jointly-filed motion for summary judgment. In this motion, they asked that Mrs. Agee be awarded one-half of the deposited funds "off the top", with the Bank's claim to be paid out of the remaining half. We find that Mrs. Agee is only entitled to the amount for which she originally pleaded.

The difference between the two suggested methods of distribution is substantial. Under the second-proposed method, which the district court adopted, the Bank received its full $7,466.00; Mrs. Agee received $8,403.68; and Bricks Unlimited received a mere $937.67. Had the initially-proposed method been employed, the Bank would still have received $7,466.00; but Mrs. Agee would have been awarded only $4,670.68; and Bricks Unlimited would have likewise been entitled to $4,670.68.

It may well be that Mrs. Agee's failure to amend her initial pleading is sufficient reason to deny her the benefits of the more-favorable method of distribution. *But see* Rule 15(b), Fed.R.Civ.Pro. (failure to amend does not affect the result of issues tried by implied consent). However, there is a more substantial reason why Mrs. Agee's recovery should be limited to the initial amount requested.

The Bank's claim to the $7,466 was founded on a debt owed to it by Ralph and Shelby Agee *in solido.* By allowing Shelby Agee to take one-half of the fund "off the top," the district court effectively required payment of the Bank to be made exclusively out of Ralph Agee's share of the proceeds. Thus, even though Shelby Agee was solidarily (jointly and severally) liable to the Bank along with her husband,[5] the court did not apply any of Shelby Agee's share of the proceeds to satisfy *her* indebtedness to the Bank.

Of course, the Bank had every right to seek payment from Ralph Agee without pursuing his wife. A creditor may seek full payment from any of his *in solido* debtors, and, in such a case, the chosen debtor may not plead for division. *See* La.Civ.Code art. 2094. In the present case, however, the Bank has not expressly made any such election. We probably could interpret the motion for summary judgment, in which the Bank joined in Mrs. Agee's request to be paid one-half of the fund "off the top," as a tacit election by the Bank not to pursue Shelby Agee. However, in view of the highly prejudicial effect this would have on the claim of Bricks Unlimited, we decline to so interpret the pleadings in the absence of more express indication by the Bank of its intention to relinquish its right to recover against the debtor-wife.

Even if the Bank's pleading were deemed to be a tacit election to pursue only Ralph Agee, under the circumstances the Bank's election should not be permitted to prejudice Bricks Unlimited. In determining the order of distribution of the interpleaded funds, we sit as a court of equity, and possess the remedial flexibility of a chancellor in shaping our decree so as to do complete equity between the parties. *See Humble Oil & Refining Co. v. Copeland,* 398 F.2d 364, 368 (4th Cir. 1968); *Brantley v.*

---

5. *See* Article 2345, La.Civ.Code, *supra,* n.4. By co-signing the note to the bank, Mrs. Agee incurred an obligation that could be satisfied from her separate estate.

*Skeens,* 266 F.2d 447, 452 (D.C.Cir.1959); 48 C.J.S. Interpleader § 52, at 226 (1981). In the present case, we do not believe it would be equitable to allow Shelby Agee through the Bank's election to escape totally her indebtedness to the Bank to the prejudice of Bricks Unlimited. The debt owed by Ralph Agee to Bricks Unlimited is presumptively an Agee community obligation, see La.Civ.Code art. 2360, which therefore could be satisfied by any Agee community property.[6] Because of the unusual configuration of both Louisiana and Mississippi law under the present facts, Mrs. Agee's interest in the fund is technically classified as "separate" rather than "community" property. Nevertheless, the money retained by Mrs. Agee as her "separate property" in fact remains with the Agee family, even though the Agee community of acquets and gains (composed of both spouses) remains liable to the judgment creditor, Bricks Unlimited, for the amount so retained.

Accordingly, we hold that the funds should have been distributed pursuant to the methodology originally requested by Shelby Agee. Under this methodology, one-half of the indebtedness owed to the Bank will be paid by each of the solidary debtors.

### V. *Conclusion*

In view of the foregoing, the district court's judgment awarding the Bank $7,466 is AFFIRMED. The judgment in favor of Shelby Agee is MODIFIED. Mrs. Agee is only entitled to one-half of the fund remaining after payment to the Bank; she is not entitled to a full one-half of the entire fund. Bricks Unlimited is entitled to the residue after payment to the Bank and Mrs. Agee in the manner set forth. The case is REMANDED to the district court for further proceedings in accordance with this opinion.

AFFIRMED IN PART, MODIFIED IN PART, AND REMANDED.

---

**6.** Even if the debt to Bricks unlimited is a separate obligation of Ralph Agee, Agee community property may be used to satisfy it. *See* La.Civ.Code art. 2345.