GREAT AMERICAN INSURANCE CO., Plaintiff,

v.

SPRAYCRAFT, INC., et al., Defendants.

No. C–1–92–1004.

United States District Court,
S.D. Ohio, W.D.

Jan. 10, 1994.

William Posey, Cincinnati, OH, Ronald Parry, Covington, KY, Annetta Riley, Charleston, SC, Fred Tilton, Cincinnati, OH, for plaintiff.

John Wirthlin, Sr, Cincinnati, OH, James Kruer, Covington, KY, John Beatty, Cincinnati, OH, Daniel Speights, Hampton, SC, for defendants.

## ORDER

CARL B. RUBIN, District Judge.

This interpleader action is before the Court for distribution of a $300,000 fund of money that Plaintiff has deposited in the Court's registry. The Court previously entered an order confirming the interpleader and dismissing Plaintiff from the case. (Doc. 47).

Defendants University of South Carolina ["USC"]; McAlister Square Limited Partnership ["McAlister Square"]; City of Rock Hill, South Carolina ["Rock Hill"]; Wauwatosa School District ["Wauwatosa"]; Catholic High School of Beloit ["Catholic High"]; LaCrosse School District ["LaCrosse"]; State of Minnesota and Regents of the University

of Minnesota [collectively, "the Minnesota Defendants"]; and City of Baltimore, Maryland ["Baltimore"], all of whom are potential claimants of the interpleaded funds, have filed their respective memoranda in support of the particular manner in which each proposes that such funds should be distributed. (*See* Docs. 34, 35, 36, 37, 41, 42, 43).

*Procedural History/The Parties' Claims*

On December 29, 1992, Plaintiff Great American Insurance Company filed a complaint for interpleader and declaratory judgment in this Court. (Doc. 1). In that action, Plaintiff acknowledged that during the 1970s, it issued insurance policies providing a total of $300,000 in property damage coverage to Defendant Spraycraft, Inc. ["Spraycraft"]. (Doc. 1, ¶ 15). Plaintiff further stated that various named Defendants had asserted or were likely to assert conflicting claims to the proceeds of such insurance policies, based upon civil judgments that those Defendants had obtained for property damage caused by asbestos-containing materials believed to have been supplied by Spraycraft or by allegedly related companies.[1] (Doc. 1, ¶¶ 11, 24–28, 31–32).

After tendering into this Court's registry a $300,000 deposit constituting the limits of its property damage liability under the subject insurance policies, Plaintiff was dismissed from this interpleader action, and Defendants were permanently enjoined from instituting further legal action against Plaintiff for any property damage claims arising under those policies. (*See* Doc. 47). During a conference before the Court, Defendants agreed that the remaining issue—distribution of that $300,000—involved a purely legal question appropriate for resolution without trial. The parties thereafter filed their respective memoranda regarding that issue. (*See* Docs. 34, 35, 36, 37, 41, 42, 43).

The parties agree that Defendants' respective claims to the interpleader proceeds are based upon the following legal judgments, listed in chronological order:

1) On August 23, 1989, Defendants Rock Hill, Wauwatosa, Catholic High and La-Crosse ["the Rock Hill Defendants"] obtained a consent judgment in the amount of $416,000 against Defendant Spraycraft and against Defendants Asbestospray, Inc. ["Asbestospray"], Asbestos Products Manufacturing Corporation, Inc. ["APM"] and H & A Construction Company, Inc. ["H & A"]. (*See* Doc. 1, Ex. 2).

2) On January 2, 1990, the Minnesota Defendants obtained a consent judgment in the amount of $1,600,000 against Defendants Asbestospray and H & A. (*See* Doc. 1, Ex. 3). On October 14, 1992, the Court in which that judgment had been entered resolved any coverage question by issuing an order that held Plaintiff Great American jointly and severally liable with Defendants Royal Insurance Company of America, North River Insurance Company and United States Fire Insurance Company [collectively, "the Insurance Company Defendants"] for the full amount of such judgment. (*See* Doc. 1, Ex. 7).

3) On September 22, 1990, Defendant McAlister Square obtained a consent judgment in the amount of $250,000 against Defendants Asbestospray and H & A. (*See* Doc. 1, Ex. 5). The applicable Court had entered a judgment of dismissal in the relevant action on April 9, 1990, based upon the pending settlement. (*See* Doc. 34, Ex. B).

4) On September 22, 1990, Defendant USC obtained a consent judgment in the amount of $3,000,000 against Defendants Asbestospray and H & A. (*See* Doc. 1, Ex. 4). The applicable Court thereafter entered a final order of judgment thereon on October 18, 1990. (*See* Doc. 34, Ex. B).

---

1. Although the subject insurance policies apparently listed only Defendant Spraycraft as the insured policy holder (*see* Doc. 1, ¶ 15), Plaintiff's complaint also refers to Defendants Asbestospray, Inc.; Asbestos Products Manufacturing Corporation, Inc. and H & A Construction Company, Inc. as being Plaintiff's "Insureds." (*See* Doc. 1, ¶ 2). The record indicates that a single individual served as the President of all four of those companies (*see* Doc. 1, ¶ 2 and Ex. 2, p. 2), and Plaintiff concedes that Defendant H & A "is the successor in interest to Spraycraft." (*See* Doc. 1, ¶ 4). The exact nature of the relationships among the rest of those entities, however, apparently is disputed. (*See, e.g.*, Doc. 1, ¶ 4, suggesting that some litigants have described Asbestospray as Spraycraft's *predecessor* in interest).

5) On August 11, 1992, following a trial, Defendant Baltimore obtained an entry of judgment on the verdict awarding $8,333,-183.81 in compensatory damages and $2,000,000 in punitive damages against Defendant Asbestospray only. (*See* Doc. 1, Ex. 6, and Doc. 37, Ex. 1).

The Rock Hill Defendants urge the Court to base the priority of distribution upon the sequence of time in which the various claimants obtained their separate judgments against Great American's insureds. The Minnesota Defendants agree that the various judgments should be prioritized according to time, but argue that the interpleaded funds should be applied first to their judgment, as that judgment is the sole judgment against Great American directly rather than against a Great American insured. Conversely, Defendants McAlister Square, USC and Baltimore contend that the interpleaded insurance proceeds should be divided among all the claimants in pro rata shares, to achieve the most equitable result possible.

### *OPINION*

■ An interpleader action is an action in equity, governed by equitable principles. *Champlin Petroleum Co. v. Ingram,* 560 F.2d 994 (10th Cir.1977), *cert. denied,* 436 U.S. 958, 98 S.Ct. 3072, 57 L.Ed.2d 1123 (1978). Accordingly, in determining the manner in which interpleaded funds should be distributed, the district court sits as a court of equity, possessing the "remedial flexibility" to "do complete equity between the parties." *Bricks Unlimited, Inc. v. Agee,* 672 F.2d 1255, 1261 (5th Cir.1982) (citing *Humble Oil & Refining Co. v. Copeland,* 398 F.2d 364, 368 (4th Cir.1968); *Brantley v. Skeens,* 266 F.2d 447, 452 (D.C.Cir.1959); 48 C.J.S. Interpleader § 52 at 226 (1981)).

■ In any action in which jurisdiction is premised upon diversity of citizenship, a federal district court should apply the law of the forum state, including its choice of law principles. *Griffin v. McCoach,* 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481 (1941); *Guy v. Citizens Fidelity Bank & Trust Co.,* 429 F.2d 828, 832 (6th Cir.1970). That rule applies in actions brought under the federal interpleader statute. *Griffin, supra; Whirlpool Corp.*

*v. Ritter,* 929 F.2d 1318, 1320–21 (8th Cir. 1991); *Equitable Life Assurance Soc'y v. McKay,* 837 F.2d 904, 905 (9th Cir.1988); *American Re–Insurance Co. v. Insurance Comm'n of California,* 527 F.Supp. 444 (C.D.Cal.1981).

■ In disputes involving a contract of commercial insurance, Ohio law generally provides that courts should interpret the insurance contract in accordance with the law of the state where the contract was made. *Nationwide Mut. Ins. Co. v. Ferrin,* 21 Ohio St.3d 43, 487 N.E.2d 568 (1986). *See also Detrex Chem. Indus. v. Employers Ins. of Wausau,* 681 F.Supp. 438, 455–56 (N.D.Ohio 1987), *modified,* (N.D.Ohio 1988). This is consistent with the federal courts' recognition that the interpleader statute was not intended to alter the state of contract insurance. *See In re Ambassador Group, Inc. Litig.,* 738 F.Supp. 57 (E.D.N.Y.1990). Although Defendant Baltimore urges the Court to apply Ohio tort law to this action (*see* Doc. 37, pp. 5–6, citing *Kurent v. Farmers Ins. of Columbus, Inc.,* 62 Ohio St.3d 242, 581 N.E.2d 533 (1991), *et al.*), this Court concludes that applying the law of the situs of the contract would be more appropriate in the context of this action.

■ The insurance contract at issue herein was made between Great American and Spraycraft, a company that was incorporated and maintained its headquarters in New York. Despite some arguments in favor of applying the contract law of Great American's home state of Ohio (*see* Doc. 37, pp. 6–7), the Court determines that this action should be governed by New York contract law. This conclusion is based upon the factors enumerated in *General Accident Ins. Co. v. Insurance Co. of N. America,* 69 Ohio App.3d 52, 59, 590 N.E.2d 33 (1990), and bolstered by Great American's own apparent position that the insurance contract was made in New York. (*See* Complaint, Doc. 1, ¶ 2; Doc. 35, p. 3; Doc. 41, pp. 5–6).

■ A review of the law of that state indicates that New York appears to recognize "first in time, first in right" as the principle to be used in determining priority of distribution. *See Duprey v. Security Mut.*

*Casualty Co.*, 22 A.D.2d 544, 256 N.Y.S.2d 987, 989 (1965); *David v. Bauman*, 24 Misc.2d 67, 196 N.Y.S.2d 746, 748 (1960); *Pisciotta v. Preston*, 170 Misc. 376, 10 N.Y.S.2d 44, 45 (1938); *Stolove v. Fidelity & Casualty Co.*, 157 Misc. 106, 282 N.Y.S. 263 (1935). Federal common law, too, would support that approach. *See Smith v. Widman Trucking & Excavating*, 627 F.2d 792, 800 (7th Cir.1980) (holding that the district court had "properly applied the federal common law priority rule of 'first in time, first in right'.").

◼ Although other Defendants argue that a pro rata distribution would be more in keeping with the equitable nature of the interpleader action, this Court finds that application of the "first in time, first in right" approach here will not result in injustice. The federal courts have recognized that the "first in time, first in right" rule *is* grounded in principles of equity. *See In re Lehigh Valley Mills, Inc.*, 341 F.2d 398, 401 (3d Cir.1965) ("The rule of Federal common law is *the general equitable principle*," "first in time is the first in right.") (emphasis added) (quoted in *Widman Trucking*, 627 F.2d at 800). The rule apparently is aimed both at protecting stakeholders from inordinate delays in determining the scope of their liability, and at rewarding diligent claimants. *See Matter of Blease*, 605 F.2d 97, 98 (3d Cir. 1979).[2]

◼ In addition, the history of the interpleader statute indicates that its primary intent was to protect stakeholders such as Great American from conflicting claims and multiple liability, *not* to ensure that all potential claimants receive an equal share of the interpleaded funds. *See, e.g., Libby, McNeill & Libby v. City Nat'l Bank*, 592 F.2d 504 (9th Cir.1978); *Dakota Livestock Co. v. Keim*, 552 F.2d 1302 (8th Cir.1977); *New York Life Ins. Co. v. Welch*, 297 F.2d 787 (D.C.Cir.1961); *Tollett v. Phoenix Assurance Co. of N.Y.*, 147 F.Supp. 597 (D.Ark.1956).

Moreover, the record in this action indicates that other funds may be available from other sources, including the insurance company Defendants herein; to help satisfy the claims of those Defendants who received later judgments against Spraycraft or its related companies.

◼ Having concluded that the interpleaded funds should be distributed on a priority-in-time basis, the Court next must determine which claim has first priority in time. The Minnesota Defendants argue that their judgment should be given priority, as all prior judgments in time were against Great American's insureds only, whereas the Minnesota Defendants obtained the earliest (and only) judgment against Great American directly.

The Minnesota Defendants concede, however, that they possess such judgment against Great American only because Minnesota is a "direct action" state, where injured parties are permitted to proceed directly against an insurer. In light of the differing state laws under which various Defendants herein brought action against Great American's insureds, the opportunity to obtain a direct judgment against Great American was not even available to other claimants, whose claims otherwise appear to be substantially similar to the Minnesota Defendants'.

Confronted with a somewhat analogous situation, the United States Supreme Court in *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 531, 87 S.Ct. 1199, 1204, 18 L.Ed.2d 270 (1967), rejected the argument that "direct action" claims should be treated differently than other claims for purposes of an interpleader action. This Court likewise finds no basis for treating the Minnesota Defendants' judgment as superior to the judgments of other Defendants herein. But for the fortuity of having brought their claims in what happened to be a "direct

---

**2.** The Great American insurance policy at issue herein provides that:

    the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

*See* Complaint, Doc. 1, Ex. 1C, p. 6, § I. That provision gives further evidence that the very contract giving rise to Great American's liability herein contemplated that claims would be paid by priority in time rather than pro rata.

action" state, the Minnesota Defendants would be in no different position than the other claimants—all obtained judgments against a party or parties ostensibly insured by Great American, and no judgment was premised upon any allegedly tortious or otherwise culpable conduct of Great American itself. The Court therefore determines that the Minnesota Defendants' judgment is not entitled to preferential treatment simply because such judgment is against Great American directly, as the direct nature of Great American's liability thereon is of no significance for purposes of this interpleader action.[3]

■ The Rock Hill Defendants indisputably obtained the earliest judgment against a Great American insured. As the amount of that judgment—$416,000—exceeds Great American's maximum liability for property damage under the terms of the insurance contract, the Court finds that the Rock Hill Defendants are entitled to distribution of the full amount of the interpleaded funds deposited with this Court.

IT THEREFORE IS ORDERED that Defendants City of Rock Hill, South Carolina; Wauwatosa School District; Catholic High School of Beloit; and LaCrosse School District hereby are determined to be entitled to receive the full $300,000 in property damage coverage provided for under Great American Insurance Company's insurance contract with Defendant Spraycraft, Inc., said amount to be applied toward the $416,000 total judgment obtained by said Defendants against Great American's insureds on August 23, 1989. The Clerk of Courts therefore is DIRECTED to distribute jointly to the aforesaid Defendants the full amount of the interpleaded funds that Plaintiff Great American deposited with this Court on or about December 29, 1992.

IT FURTHER IS ORDERED that the record reflect that this matter resolves the issue of Plaintiff Great American's liability for property damage coverage on the insurance contracts at issue only. Nothing in this action is to be construed as affecting said Plaintiff's liability for bodily injury or other forms of coverage, or as affecting said Plaintiff's liability for judgments against Plaintiff directly, for pre- or post-judgment interest, or for any other matters outside of the property damage insurance coverage.

IT IS SO ORDERED.

---

**3.** Although Great American's direct liability for a particular judgment might be of great significance in an action in which Great American was attempting to deny coverage under an insurance contract, that simply is not the case here. Great American apparently abandoned all contract defenses and conceded liability for the full limits of its property damage coverage by initiating this interpleader action and depositing its stake with the Court. (*See* Doc. 36, pp. 2–3; Doc. 41, p. 2).