OPINION OF THE COURT
William H. Keniry, J.
Petitioners in this CPLR article 78 proceeding seek a judgment compelling the Comptroller of the State of New York to pay them $4.55 million in compliance with the terms of three agreements for advance payments entered into between the petitioners and the State pursuant to EDPL 304.
On April 19, 1988, the State of New York acting through the Office of Mental Hygiene and the Facilities Development Corporation acquired three parcels of real property owned by petitioners in Brooklyn through the exercise of its power of eminent domain (Mental Hygiene Law art 71). The State appraised the properties and valued the three parcels at $4.55 million. Although petitioners disputed the State’s value, petitioners and the State executed three written agreements entitled "Agreement for Advance Payment” on July 12, 1988 in conformity with EDPL 304 (A) (4) in which petitioners agreed to accept and the State agreed to pay the sum of $4.55 million to acquire the properties subject to petitioners’ right to thereafter pursue additional compensation (see, EDPL art 5). The agreements provided that payment was to be made "only upon approval of this Agreement by the Comptroller of the State of New York and upon certificate of the Attorney-General of the State of New York as required by law”. The Attorney-General has issued his certification. The Comptroller has not approved payment.
Petitioners seek, inter alla, a judgment in the nature of mandamus to compel the Comptroller to approve the payments provided for in the three agreements and to issue said payments to petitioners. Issue has been joined. The respondent admits the material factual allegations set forth in the petition but raises two objections in point of law which it contends bars the relief sought.
The first objection is based upon the Comptroller’s constitutional and statutory power to audit and certify any claim before payment may be made from State funds. (NY Const, art V, § 1; State Finance Law § 8 [3].) The Comptroller has refused to certify the payments required by the subject agreements *110 contending that the petitioners are indebted to the State and that the State is therefore entitled to a setoff against such funds. The Comptroller’s second objection is that any payment to petitioners is stayed by CPLR 5519 (a) (1) based upon the State’s filing of a notice of appeal in a related action.
In order to understand the basis for the Comptroller’s objections in point of law, the court must set forth the facts in greater detail.
The petitioners are two closely held New York corporations which held title to three parcels of real property in Brooklyn. The president of both corporations is Dr. Karl Easton. The stock of the two corporations is owned by Dr. Easton and members of his immediate family. Before the 1988 condemnation, the three properties were leased by petitioners to the Brooklyn Psychosocial Rehabilitation Institute (BPRI). BPRI is a not-for-profit corporation which operated residential and outpatient facilities for the treatment of mentally disabled persons. Dr. Easton was alleged to be an owner and employee of BPRI. In 1986 a legal proceeding entitled "People of the State of New York, New York State Office of Mental Health, New York State Department of Social Services v. Brooklyn Psychosocial Rehabilitation Institute, 3 Lafayette Avenue Corp., Cobble Hill Center Corp. Dr. Karl Easton, Jacqualine Easton, Irving Link and Theodore Rosten” (People v BPRI) was instituted in Kings County Supreme Court. Among the causes of action alleged in the complaint were claims that the defendants, including Dr. Easton, BPRI and the petitioners herein, were guilty of Medicaid fraud and other financial improprieties. The plaintiffs in People v BPRI seek, among other relief, restitution, money damages and penalties which the Comptroller, in this proceeding, alleges exceed $7.5 million. People v BPRI was assigned to a Judicial Hearing Officer for trial. The case was tried and a judgment was entered on May 6, 1991 dismissing the complaint. The State filed a notice of appeal on May 23, 1991. This proceeding was commenced on May 14, 1991.
The Comptroller argues that, pending the resolution of the State’s appeal in People v BPRI, he may properly refuse to certify payment of the condemnation awards on the grounds that a common-law setoff exists in favor of the State against the petitioners and that the status quo should be maintained to protect the State in the event that it ultimately secures a reversal of the unfavorable determination in People v BPRI and thereafter a judgment in its favor against petitioners in People v BPRI.
*111 An order in the nature of mandamus is "appropriate only where the right to relief is 'clear’ and the duty sought to be enjoined is performance of an act commanded to be performed by law and involving no exercise of discretion” (Matter of Kupersmith v Public Health Council, 101 AD2d 918, 919, affd 63 NY2d 904). "The act sought to be compelled must be ministerial, nondiscretionary and nonjudgmental, and [must] be premised upon specific statutory authority mandating performance in a specific manner” (Matter of Brown v New York State Dept. of Social Servs., 106 AD2d 740, 741, lv denied 65 NY2d 604).
The law is settled that the Comptroller may exercise the common-law right of setoff in order to collect a debt owed to the State (see, Williams Press v State of New York, 45 AD2d 397, revd on other grounds 37 NY2d 434). Setoff has been allowed when the State’s claim has not been reduced to judgment (Matter of 124 Ferry St. Realty Corp. v Lefkowitz, 86 AD2d 928; Matter of McMahon v Levitt, 47 AD2d 976) or when the setoff is unrelated to the State’s debt to the claiming party. (Matter of Chase Manhattan Bank v State of New York, 48 AD2d 11, affd 40 NY2d 590.)
The Comptroller’s power to assert a setoff is not without limitation. The Comptroller may not attempt to justify the nonpayment of a debt or obligation owed by the State "by the assertion of a counterclaim or setoff not only not due and payable, but contingent, possible and in futuro” (Matter of Fehlhaber Corp. v O’Hara, 53 AD2d 746, 747).
Under the circumstances presented in this record, the court finds no basis to conclude that a legitimate setoff exists in the State’s favor against the petitioners. At best, the State is able to show a mere possibility that it will be successful in ultimately recovering a judgment against these petitioners. It must be recognized that the petitioners here are two distinct corporate entities which owned three parcels of real property which were condemned and appropriated by the State. There is no evidence before the court that these two corporations are guilty of Medicaid fraud. The record does not, in the court’s opinion, demonstrate the existence of a viable setoff to warrant the Comptroller’s refusal to issue payment of the advance payments authorized by the three agreements. The alleged setoff is, at best, only "contingent, possible and in futuro” (Matter of Fehlhaber Corp. v O’Hara, supra, at 747). The Comptroller’s first objection in point of law is without merit.
*112 The Comptroller’s second objection in point of law is based upon CPLR 5519 (a) which provides that the service of a notice of appeal "stays all proceedings to enforce the judgment or order appealed from” where the appellant is the State. The Comptroller argues that, since the State timely filed a notice of appeal in the case of People v BPRI, such filing should stay the payments sought to be compelled in this proceeding. The stay permitted by CPLR 5519 (a) has been strictly construed (see, Baker v Board of Educ., 152 AD2d 1014; Walker v Delaware & Hudson R. R. Co., 120 AD2d 919). The court discerns no legal basis to expand the reach of CPLR 5519 (a) (1) to stay the prosecution of a separate and distinct proceeding which is tangentially related to another case in which an appeal has been taken. The respondent’s second objection in point of law is without merit.
Since both of the reasons advanced by the Comptroller in justification of his refusal to approve and make payment to petitioners of the payments required under the executed agreements have been determined to be without merit, the petitioners are entitled to a judgment in their favor directing the Comptroller to approve and process the subject payments. The petition is granted without costs.